## SAPERO v. MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 316, September Term, 1963.]

*Decided May 6, 1964.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Julius G. Maurer* and *Albert A. Sapero* for appellant.

*John A. Dewicki* and *Simon Schonfield, Assistant City*

*Solicitors,* with whom were *Joseph Allen, City Solicitor,* on the brief, for Mayor and City Council of Baltimore, one of appellees, and *Henry Miller,* on the brief for K. Michael Jeffrey, other appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order affirming a decision of the Board of Municipal and Zoning Appeals of Baltimore City denying an application for a special exception or variance under sec. 36(b) of the City Ordinance so as to permit the erection of a building on a vacant lot in a residential district, to be used for stores and offices. The lot in question is an irregular one at the southeast corner of Fallstaff and Reisterstown Roads. We had before us the lot at the northeast corner in *Baltimore v. Sapero, 230* Md. *291,* but the physical characteristics of that lot were very different. We pointed out that the location of Fallstaff Road by the City authorities at a 45 degree angle had left only 12 feet of the frontage on Reisterstown Road zoned commercial, and that a filling station was located on the adjoining property. We affirmed the trial court's holding that on the evidence presented the appellee would be deprived of any reasonable use of the property, unless the variance were granted.

In the instant case it was shown that the property along Fallstaff Road and Reisterstown Road to the south and east from the corner is solidly residential, although to the north on Reisterstown Road it is almost solidly commercial. Across Reisterstown Road the property is residential down to a shopping center several blocks away. Thus Fallstaff Road is a natural boundary between the two zones. A public elementary school is located on the south side of Fallstaff Road a block and a half away. In the process of locating Fallstaff Road the southeast lot gained what the northeast lot lost. There is nothing in its physical aspects that would prevent its use for residences of one kind or another. The testimony is uncontradicted that the houses on adjoining properties to the south and east are occupied as residences or apartments. The lot in question has a frontage of more than 97 feet on Reisterstown Road and 160 feet on Fallstaff Road, with a fifteen foot alley in the rear. The foregoing

facts serve to distinguish the instant case also from *Frankel v. City of Baltimore,* 223 Md. 97.

The appellant testified that he had built many of the residences in the neighborhood. In fact, he had the area reclassified from commercial to residential, in order to obtain financial aid from the Federal Housing Administration. To this extent, at least, the hardship may be said to be the result of his own action and not the City's action in locating the street. He said no houses had been built in the past fifteen years, but that is perhaps explained by the fact that there is little vacant property in the area. His assertion that, if built, they could not be sold at a profit, is little more than speculation. He sought to bolster this opinion by the record of testimony in the former case, but that, of course, related to a different situation. He called Mr. Bandiere as an expert in the instant case, but Mr. Bandiere merely testified that the "best and highest usage" of the property would be for store and office use. He did not testify that it could not be used for any residential purposes. Cf. *Pem. Co. v. Baltimore City,* 233 Md. 372, 377. In short, we think the Board and the trial court were justified in concluding that a denial of the variance would not amount to a taking in the constitutional sense. We think the issue was at least fairly debatable.

The Board also relied, in denying the variance, upon failure of the appellant to establish that its grant would not adversely affect the general welfare, under sec. 35(j). It found that the proposed use would create a serious traffic hazard, because of the proposed parking spaces provided on a drive-in, back-out basis, the proposed opening of a cut-off driveway between the two thoroughfares, the proximity to the school, and the existence of traffic islands at the corner. There was evidence to support the finding.

Taking the evidence as a whole we cannot find that the action of the Board was arbitrary or unreasonable.

*Order affirmed, with costs.*