STOCKSDALE, ET AL. *v.* BARNARD, ET UX.

[No. 373, September Term, 1964.]

542

*Decided July 29, 1965.*

*Motion for rehearing filed August 27, 1965, denied and opinion modified September 15, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, OPPENHEIMER and BARNES, JJ.

*John G. Noppinger*, with whom was *C. Warren Colgan* on
the brief, for appellants.

*Donald J. Gilmore* and *Eugene G. Ricks* for appellees.

MARBURY, J., delivered the opinion of the Court.

Objecting neighbors, the protestants, appeal from an order
of the Circuit Court for Baltimore County reversing an order
of the County Board of Appeals and granting a petition of the
appellees, the applicants, for the reclassification of certain prop-
erty, which petition the Board had denied. The reclassifica-
tion had originally been disallowed by the Zoning Commis-
sioner. The Board by a one to one split decision, only two
members having heard the case, affirmed the finding of the
Zoning Commissioner.

The appellees filed a motion to dismiss the appeal, which
was heard immediately prior to the argument on the merits.
The motion raises two contentions: (1) that none of the protes-
tants has sufficient interest to maintain this appeal, and (2)
that they were too late in intervening and answering the peti-
tion on appeal from the Board's order.

The first of these is based on the fact that the Bridlewood
Association, Inc., one of the appellants, did not participate in
the appeal from the Board, nor was it either an aggrieved party
or a taxpayer. There seems to be no question that the other
protestants, Robert G. Stocksdale and Edward A. Cockey, 3rd,
have a sufficient interest, since Stocksdale's residence adjoins
the property in question, and Cockey resides next to Stocksdale.
The appellants argue that the Bridlewood Association, Inc., is
a proper party on appeal because certain members own homes

on the same street near the applicants' property. We do not agree with this contention. Under the ordinances of Baltimore County authorizing appeals by persons aggrieved, this Court has held that an appeal is not authorized by an association as a party aggrieved by reason of its members being aggrieved. *Improvement Ass'n v. Raine,* 220 Md. 213, 151 A. 2d 734, and cases therein cited. The motion to dismiss the appeal of the Bridlewood Association, Inc., is therefore granted. However, on the record, Stocksdale and Cockey are taxpayers and parties in the lower court, and are consequently entitled to appeal to this Court. *Windsor Hills Imp. Ass'n v. Balto.* 195 Md. 383, 394, 73 A. 2d 531.

The second ground upon which dismissal is sought is that the protestants' petition to intervene and answer to the petition on appeal failed to set forth any cause for the failure to file them within thirty days, as provided by Maryland Rule B9. The record indicates that the petition to intervene and answer were not filed by the appellants until September 8 and 9, respectively, 1964, which dates were nineteen and twenty days beyond the thirty day period provided by the Rules. Appellees then filed a motion to strike and a motion *ne recipiatur* to the petition because of its late filing. A hearing on these motions resulted in a denial of both of them, and the court below proceeded to a hearing of the case on its merits. We think that the lower court had the power and right to rule as he did.

Although Rule B9 states that a party to the proceeding before the administrative agency shall, within thirty days of the date of the filing of the petition of appeal, file a demurrer or an answer, it also provides that the time for demurring or answering can be "such longer or shorter time as may be fixed by the Court." We said in *Toomey v. Gomeringer,* 235 Md. 456, 459-60, 201 A. 2d 842:

> "Though ordinarily an answer should be filed within the thirty days, we think that Rule B9 is not inflexible and mandatory as to the thirty day period. It is not shown that the applicants were prejudiced by the delay from early June to early August in the filing of the answer, and the delay seems to have been due

at least to some extent to delay on the part of the applicants in furnishing the protestants with a copy of the petition of appeal as had been promised. * * * We accordingly hold that the time requirement of Rule B9 is not mandatory, and we think that it was within Judge Turnbull's discretion to refuse to strike out the answer of the protestants, and we find nothing to indicate any abuse of discretion on his part in so refusing."

*Cf. Irvine v. Montgomery County,* 239 Md. 113, 210 A. 2d 359. The appellants Stocksdale and Cockey were protestants before the Board and the appellees and their counsel were fully aware of their identity, their opposition and the grounds for the opposition. They also were aware that the appellants intended to continue their fight in the circuit court and knew the lawyers who would represent them there. Counsel for both sides apparently met with Judge Menchine in regard to a hearing of the appeal which had been set tentatively for August 31 but which had to be postponed, and was, by agreement, put down for September 10. The appellees knew also that an answer was to be filed and the essence of what the answer would contain. The answer was filed on September 9 and contained no surprises. No actual prejudice to the appellees by reason of the late filing of the answer is either claimed or shown.

The words of *Toomey, supra,* are apposite and, as was said there, we think it was within the trial judge's discretion to refuse to strike the answer and we find nothing to indicate any abuse of discretion on his part in so refusing. We deny the motion to dismiss insofar as it is based upon delay in the filing of the appellants' petition and answer in the Circuit Court.

We now proceed to the merits of this case. The appellees filed with the Zoning Commissioner for Baltimore County an application for a reclassification of property owned by them from an R-6 to R-A zone, with a special exception for office use and a variance relating to setback. The R-6 zone in Baltimore County is for one or two-family residential use, with an area of 6,000 square feet for a one-family dwelling and of 10,000 square feet for a two-family dwelling. The R-A zone is for resi-

546·

dential use as apartments. The basis for the petition was set forth as substantial changes in the character of the neighborhood and an error in the original zoning map adopted for the 9th Election District of Baltimore County in 1955. The evidence as to original error, if there was any, was not sufficient to require discussion by us. The subject property is located at the northeast corner of York Road and Croftley Road in the community known as Bridlewood. It is improved by a two-story house on a lot 150 feet in depth, and fronts some 70 feet on the east side of York Road, a four lane highway also known as Route 111. The appellees purchased the property in 1956 and Dr. Barnard began the practice of dentistry, opening an office in the house in 1957, a permissive use provided he resides on the premises. The entrance to the dental office is from Croftley Road. The Baltimore County official zoning map indicates that the land on the north and south of this property, on the east side of York Road, is zoned R-6, with the exception of one small lot zoned R-A at the corner of Thornhill and York Roads. Dr. Barnard filed his application because he wished to move his family, which had increased in recent years, to a larger home but to retain the location of his office and convert the remainder of his house into apartment use.

After a public hearing the Zoning Commissioner denied the application request. His order indicated:

"Visual inspection of the property reveals that the house owned by the petitioners is part and parcel of a very fine residential development which may be described as a thriving residential development and one which is extremely well kept.

"There is no reason to change the present residential classification because it is obvious that this particular portion of York Road is now being properly used for residential purposes. The only break in classification on York Road is another residential use for doctors' offices, at the corner of York and Thornhill Roads, * * *.

"The reclassification granted at the corner of York and Thornhill Roads was dubious at best and the many

restrictions imposed by the then Board of Appeals indicates a real danger that might be caused by this reclassification. In this case it was ordered that there shall be no parking on the subject property other than that permitted for an ordinary residence. Such a restriction certainly implies that further apartment zoning would be improper."

This decision was affirmed by the County Board of Appeals. However, the Circuit Court for Baltimore County reversed the findings of the Zoning Commissioner and the Board.

The appellants in this appeal first argue that the lower court exceeded the limits of its scope of review. They maintain that since the Board split one to one in its decision, the case was before the Circuit Court on exactly the same footing as if the decision had been unanimous. However, the appellees argue that the Court below has an unlimited review. It has been clearly set out by this Court that on appeal from a split decision from the Board, the Circuit Court can not make its own independent findings of fact, but must resolve whether the decision of the Board is or is not in accordance with law. Thus, it must decide as if the appeal had been taken from a majority decision by the Board. The function of the reviewing court is limited and it may set aside as not in accordance with law an action of the Board which is arbitrary, illegal or discriminatory. It is not the function of the reviewing court to zone or rezone but only to decide whether the Board properly applied the applicable law to the facts. The Court can not substitute its own judgment for that of the Board if the question is fairly debatable. If there is room for reasonable debate as to whether the facts justify the Board in its decision, it must be upheld. It is only where there is no room for reasonable debate, or where the record is devoid of supporting facts, that the Court is justified in declaring the legislative action of the Board arbitrary or discriminatory. *DePaul v. Board,* 237 Md. 221, 205 A. 2d 805; *Levy v. Seven Slade, Inc.,* 234 Md. 145, 198 A. 2d 267; *Missouri Realty, Inc. v. Ramer,* 216 Md. 442, 140 A. 2d 655; *Offutt v. Bd. of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219.

The Zoning Commissioner, as pointed out in his opinion

above, after a visual inspection, found that the portion of York Road in question was a thriving residential development. One member of the Board accepted the advice and conclusions of the Zoning Commissioner and, in addition, in his opinion found that the granting of a special exception at this location would be creating undue concentration on a small residential lot and would also create parking and traffic problems. This resulted in the denial of the application even though the other member was of a contrary view. At this point the function of the reviewing court was to decide whether the presumption of the correctness and constitutionality of the Board's quasi-legislative action had been overcome by the showing of the applicant that there was no reasonable basis in fact to support the denial as an exercise of the police power. *Levy v. Seven Slade, Inc., supra; Montgomery County v. Walker,* 228 Md. 574, 180 A. 2d 865; *M. & C. C. of Balto. v. Biermann,* 187 Md. 514, 50 A. 2d 804.

The record shows that the subject property lies on York Road almost midway between Seminary Avenue on the south and Bellona Avenue on the north. On the opposite side of York Road there have been some zoning applications granted for R-A classification. However, on the east side of York Road there have been no changes in the immediate neighborhood with the exception mentioned above at the corner of Thornhill Road. Judge Menchine in his colorful opinion cited *Levy v. Seven Slade, Inc., supra,* and concluded that the Board had no reasonable basis in fact to support the denial, and reversed the Board, thus allowing the applicants' petition for relief. He based his decision on the fact that several zoning changes had been granted in the area. But, an examination of the record shows that all except one of these changes in the immediate neighborhood were on the opposite, west side of York Road from applicants' property. We have held in past cases that a street or road may be a natural boundary line between two zones. *Sapero v. M. & C. C.,* 235 Md. 1, 200 A. 2d 74. In *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 192 A. 2d 502, we held that the existence of apartment uses on one side of the street does not alter the use of the land on the opposite side, and therefore the street is an appropriate line of demarcation. Here, there was evidence be-

fore the Commissioner and the Board from which they reasonably could and did reach their conclusions. We therefore think that the questions before them were at least fairly debatable and that the trial court actually substituted its judgment for that of the Commissioner and the Board, and that in so doing, it exceeded the proper exercise of its powers.

Having reached this result we need not consider appellants' final argument that there was no evidence to justify appellees' request for a variance or special exception.

For the reasons set forth above, the order of the Circuit Court must be reversed with directions to reinstate the order of the Board denying the reclassification, special exception and variance.

*Order reversed and case remanded for the passage of an order reinstating the order of the Board. The appellees to pay the costs in this Court and below.*