612 A.2d 241

MEDICAL WASTE ASSOCIATES, INC.

v.

MARYLAND WASTE COALITION, INC.

No. 163, Sept. Term, 1990.

Court of Appeals of Maryland.

Sept. 16, 1992.

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jeffrey E. Howard, Asst. Atty. Gen., on brief), Kevin A. Dunne, argued (Jervis S. Finney, George W. Kelly, Ober, Kaler, Grimes & Shriver, on brief), Baltimore, for petitioner/cross-respondent.

G. Macy Nelson (James S. Aist, Anderson, Coe & King, on brief), Baltimore, for respondent/cross-petitioner.

Argued Before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired), Specially Assigned, JJ.

ELDRIDGE, Judge.

The dispute in this case arises from the decisions of the Maryland Department of the Environment to issue two permits which allowed Medical Waste Associates, Inc., to

construct a medical waste incinerator in Baltimore City. Maryland Waste Coalition is an incorporated volunteer environmental organization whose corporate purpose is protecting Maryland's environment. The central question in this case relates to whether and how the Coalition can challenge the issuance of these permits in light of the standing requirements of Maryland law.

## I.

Medical Waste Associates sought approval from various regulatory bodies to construct a medical waste incinerator in the Hawkins Point area of Baltimore City. Eleven public hearings were held on a variety of permits. The Coalition testified or submitted written material at most of these hearings, including those held by the Department of the Environment on an air quality control permit to construct and a refuse disposal permit. On September 8, 1989, the Department of the Environment issued the refuse disposal permit and the air quality control permit authorizing Medical Waste Associates to construct the medical waste incinerator.

The Coalition filed two separate actions designed to challenge the issuance of these permits. On September 18, 1989, the Coalition filed in the Circuit Court for Baltimore City a complaint seeking judicial review of the agency's decisions under Code (1982, 1987 Repl.Vol., 1991 Cum. Supp.), § 9–263 of the Environment Article, and requesting that the refuse disposal permit and the air quality control permit be vacated and set aside.[1] Pursuant to § 9–263, the

---

1. Section 9–263 provides:
 "**Judicial review.**
 Any county, municipality, legally constituted water, sewage or sanitary district, institution, or person dissatisfied with any order, rule, or regulation of the Secretary under this subtitle may commence, within 10 days after the service of the order, rule, or regulation, an action in the circuit court for any county to vacate and set aside the order, rule, or regulation on the ground that the order, rule, or regulation is unlawful or unreasonable, or that the order is not necessary for the protection of the public health or comfort...."

complaint alleged that the issuance of the permits was unreasonable and not necessary for the protection of the public health or comfort.

On October 5, 1989, the Department of the Environment and Medical Waste Associates filed motions to dismiss the § 9–263 complaint. In these motions, they argued that the complaint should be dismissed for lack of subject matter jurisdiction because § 9–263 does not provide for judicial review of a permit but only for review of an order, rule or regulation.[2] They also argued that the complaint should be dismissed because the Coalition had no organizational property interest separate and distinct from its individual members and therefore did not have standing to maintain the action.

On October 6, 1989, the Coalition filed in the Circuit Court for Baltimore City a petition under Maryland Rule B2 for judicial review of the Department of the Environment's decisions to issue the refuse disposal and air quality control permits. Contending that the issuance of the permits was subject to review under the Administrative Procedure Act (APA), Code (1984), § 10–201 *et seq.* of the State Government Article, the petition alleged that the decisions to issue the permits by the Department of the Environment constituted "an abuse of discretion, [was] clearly erroneous, and · lacked substantial evidence...."

Medical Waste Associates filed a motion to intervene in the action for judicial review under the APA as well as a motion for consolidation of the two judicial review actions. It also moved to dismiss the action for judicial review under the APA. The Department of the Environment likewise

---

**2.** Although the distinction was not made in the Coalition's complaint or before the trial court, the Coalition later apparently conceded, as it must, that judicial review under § 9–263 does not apply to the air quality control permit because the air quality control permit was issued under Code (1987, 1991 Cum.Supp.), Subtitle 4, § 2–404 of the Environment Article. Section 9–263 applies only to an order, rule or regulation issued under subtitle two of the Environment Article. The refuse disposal permit was issued under subtitle two of the Environment Article.

filed a motion to dismiss the petition for judicial review under the APA. In these motions to dismiss, Medical Waste Associates and the Department argued that the administrative proceedings leading to the issuance of the permits were legislative in nature and were not "contested cases" under the APA. Therefore, for each of these reasons, according to the petitioners, the Coalition could not obtain judicial review under the APA. They also argued that the Coalition lacked standing to request judicial review because the Coalition was not an "aggrieved party" under the APA as it had no property interest separate and distinct from that of its members.

The circuit court dismissed both cases. The trial court held that the Coalition could not challenge, under § 9–263 of the Environment Article, the Department's decision to issue a refuse disposal permit because the issuance of a permit was not an "order." The court further decided that the Department's decisions to issue the permits were not subject to judicial review under the APA because the administrative proceedings were not contested cases under the APA. The trial judge also stated that these administrative proceedings were legislative in nature and thus not reviewable. Alternatively, the trial court held that the Coalition lacked standing to request judicial review under either the APA or § 9–263 of the Environment Article.

The Coalition appealed in both cases. In its brief in the Court of Special Appeals, the Coalition argued that it had standing to challenge the issuance of the refuse disposal permit under § 9–263 because it was an institution or person which was dissatisfied with an action of the Secretary of the Department of the Environment and which appealed in a timely manner an order of the Secretary to issue the permit. According to the Coalition, it also had standing under the APA because it was a party at the administrative proceedings and because it was aggrieved by the Department's decisions to issue these permits. The Coalition also argued that the administrative proceedings

fell within the APA's definition of "contested case," and thus the proceedings were subject to judicial review under the APA.

In addition, the Coalition urged the Court of Special Appeals to adopt the position of the federal courts regarding standing.[3] The Coalition pointed to the declaration of intent and policy set forth in the Maryland Environmental Standing Act (MESA), Code (1974, 1989 Repl.Vol.), § 1–502 of the Natural Resources Article, as an indication of the General Assembly's intent to allow groups such as the Coalition to have standing in environmental matters.[4] It did not, however, specifically argue that MESA gave it standing to seek judicial review. Finally, the Coalition argued that it met the common law requirements for standing because it brought the suit on behalf of its individual members, rather than to vindicate a group property interest, and that those individual members had an injury which differed from that of the general public.

---

**3.** According to the Coalition, the position of the federal courts is that an environmental group may seek protection of aesthetic, conservational and recreational interests on behalf of its members if it can show: "(1) its members would otherwise have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in a lawsuit," quoting *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 445 (D.Md.1985). The Coalition also relied upon *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636, 645 (1972).

**4.** Section 1–502 provides:
"**Declaration of legislative policy and intent.**
"The General Assembly finds and declares that the natural resources and scenic beauty of the State of Maryland are in danger of irreparable harm occasioned by the use and exploitation of the physical environment. It further finds that improper use and exploitation constitute an invasion of the right of every resident of Maryland to an environment free from pollution to the extent possible. It further finds that the Courts of the State of Maryland are an appropriate forum for seeking the protection of the environment and that an unreasonably strict procedural definition of 'standing to sue' in environmental matters is not in the public interest."

The Court of Special Appeals remanded the case to the circuit court for further proceedings. *Maryland Waste v. Department*, 84 Md.App. 544, 581 A.2d 60 (1990). The intermediate appellate court held that the circuit court correctly determined that it lacked subject matter jurisdiction over the § 9–263 complaint because a permit is not an "order" and therefore the issuance of the refuse disposal permit was not subject to judicial review under that section. Relying on selected general dictionary definitions, the Court of Special Appeals reasoned that an "order is a command of some authority which cannot be ignored," whereas a "permit is merely a grant of authority to do a specific act. The permittee need not do the specified act but is allowed to do so." 84 Md.App. at 553–554, 581 A.2d at 64.

With regard to standing, the Court of Special Appeals refused to adopt the federal law principles urged by Coalition. The intermediate appellate court held that the circuit court correctly decided that the Coalition did not meet the Maryland common law requisites for standing.

The Court of Special Appeals purported not to finally decide whether the Coalition could maintain its action for judicial review under MESA. The Court of Special Appeals, however, strongly indicated its view that the Coalition would "be able to pursue its appeal" from the administrative decisions under MESA. 84 Md.App. at 560, 581 A.2d at 68. In fact, as to certain preliminary requirements for filing a MESA action, including the requirement of notice to the State, the intermediate court actually ruled that the Coalition had complied with MESA. Moreover, by remanding these judicial review actions to the circuit court for further proceedings, the Court of Special Appeals seemed to decide implicitly that MESA applied to an action for judicial review challenging the issuance of a permit. 84 Md.App. at 558–561, 581 A.2d at 66–68.

Medical Waste Associates and the Department of the Environment sought certiorari review by this Court. They primarily argued that the Court of Special Appeals exceeded its authority, or alternatively abused its discretion, when

it invoked MESA even though the Act had not been addressed by the parties in the circuit court. They also argued that the administrative proceedings were not contested cases under the APA; they contended that the proceedings were legislative in nature and thus not subject to judicial review. In addition, they argued that the Court of Special Appeals erred by taking the position that MESA could be applicable to an action for judicial review of an administrative decision and by remanding the case for a circuit court determination of whether the Coalition's actions could be maintained under MESA. The Coalition filed a conditional cross petition for a writ of certiorari, requesting that this Court decide whether an environmental association has standing to challenge the issuance of a refuse disposal permit under § 9–263, and whether an environmental association has a right to challenge the issuance of a refuse disposal permit and an air quality control permit under the APA. The Coalition also urged this Court to adopt the position of the federal courts concerning the standing requisites for an environmental association to bring an action on behalf of its members. This Court granted both the petition and the cross petition.

## II.

We first turn to the contentions by Medical Waste Associates and the Department that the Court of Special Appeals exceeded its authority, or abused its discretion, by considering the applicability of MESA when that issue had not been raised in the circuit court.[5]

---

5. Medical Waste Associates also argues that the Court of Special Appeals exercised original and not appellate jurisdiction when it invoked MESA as a basis for standing. This argument is utterly without merit. Although this action originated in an administrative proceeding, it was reviewed by a judicial tribunal, the Circuit Court for Baltimore City. As we stated in *Shell Oil Co. v. Supervisor*, 276 Md. 36, 43, 343 A.2d 521, 525 (1975) (emphasis in original),

"the exercise of appellate jurisdiction requires a prior action by some *judicial* authority, or the prior exercise of *judicial* power...."

Maryland Rule 8–131(a) provides as follows (emphasis added):

"Generally.—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised by the trial court. *Ordinarily,* the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary to avoid the expense and delay of another appeal."

This Rule employs the term "ordinarily," and, as we have repeatedly stated, this Court and the Court of Special Appeals have discretion to consider an issue suggested by the record in the case even though the issue was not raised in the trial court. *Crown Oil v. Glen,* 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990); *Yarema v. Exxon Corp.,* 305 Md. 219, 231 n. 9, 503 A.2d 239, 245 n. 9 (1986); *Taub v. State,* 296 Md. 439, 441, 463 A.2d 819, 820 (1983); *Squire v. State,* 280 Md. 132, 134–135, 368 A.2d 1019, 1020 (1977); *Dempsey v. State,* 277 Md. 134, 141–142, 355 A.2d 455, 458–459 (1976).

Moreover, the general issue of standing had been litigated and resolved in the trial court. MESA was simply another possible basis of support for the Coalition's claimed standing in this case. *See Crown Oil v. Glen, supra,* 320 Md. at 560–561, 578 A.2d at 1190–1191 (1990); *O'Leary v. Shipley,* 313 Md. 189, 196, 545 A.2d 17, 20 (1988).

Therefore, while the Court of Special Appeals could have decided not to address MESA, we cannot say that its decision to do so was an abuse of discretion. *Cf. Ritchie v. Donnelly,* 324 Md. 344, 375, 597 A.2d 432, 447 (1991).

---

The circuit court's dismissal of these cases was a prior exercise of judicial power which was properly reviewed by the Court of Special Appeals in accordance with that court's appellate jurisdiction.

### III.

Medical Waste Associates and the Department argue that the administrative decisions to issue these two permits were not subject to judicial review on any theory. As to the refuse disposal permit, they contend, and the courts below agreed, that an administrative decision to issue a permit is not an "order" and therefore is not subject to judicial review under § 9–263 of the Environment Article. In addition they argue that the Department of Environment administrative proceedings were not contested cases and thus were not subject to judicial review under the APA. They insist that the administrative proceedings were "legislative" in nature and thus not judicially reviewable on the grounds of arbitrariness, capriciousness, or lack of support by substantial evidence.

### A.

Both the circuit court and the Court of Special Appeals held that the Department's decision to issue a refuse disposal permit was not an "order" as that term is used in § 9–263 of the Environmental Article and that, therefore, judicial review of this permit is not authorized by this section. As we shall explain in Part III B, *infra,* the administrative proceeding involving an application for a refuse disposal permit is a contested case under the APA. Consequently, even if the petitioners and the lower courts were correct in their view of an "order," the issuance of this permit would be subject to judicial review under the APA.

The lower courts, however, incorrectly narrowed the definition of "order" in § 9–263. We disagree with the Court of Special Appeals' notion that a final administrative decision issuing a permit is not an order because, according to the court, an order commands while a permit merely al-

lows.[6] There are in legal proceedings many "orders" under which the prevailing party may decide to forego the benefit. There are also many government issued "permits" under which the subject activity must be carried out. More importantly, however, in the context of adjudicatory proceedings, the word "order" normally means "decision." Both the APA and the Maryland rules use "order" synonymously with "decision." *See, e.g.,* § 10–214 of the State Government Article; Maryland Rule 2–602. The Department's decision to issue the refuse disposal permit was an adjudication of the rights and responsibilities of the parties to that administrative proceeding. Therefore, to the extent that § 9–263 applies to "orders" of the Secretary, the final administrative decision to issue a permit is an "order" under that section.[7]

---

**6.** Under the theory adopted by the Court of Special Appeals, an administrative decision denying an application for a permit would presumably be an "order" and subject to judicial review, but an administrative decision granting a permit would not be an "order."

**7.** Both the parties and the courts below in this case operated under the assumption that the judicial review provisions of § 9–263, with respect to administrative "orders," had not been superseded by the Administrative Procedure Act. The judicial review provision currently codified at § 9–263 of the Environment Article was originally enacted by Ch. 810 of the Acts of 1914. Except that a predecessor agency was named instead of the Secretary of the Department of the Environment, the statute has not been changed in substance since then. The Administrative Procedure Act was enacted by Ch. 94 of the Acts of 1957, and in section 3 of Ch. 94, the General Assembly provided that "all Acts or parts of Acts which are inconsistent with the provisions of this Act are hereby repealed to the extent of such inconsistency."

The Department of the Environment is an agency subject to the judicial review provisions of the APA, and, as discussed in Part III B of this opinion, the administrative proceedings were "contested cases" within the meaning of the APA. As the Revisor's Note to § 9–263 points out, the Department of the Environment "contends that this section [§ 9–263] is superseded by the Administrative Procedure Act...." Furthermore, the scope of judicial review set forth in § 9–263 might well be broader than is constitutionally permissible. *See Dep't Nat. Res. v. Linchester,* 274 Md. 211, 224–229, 334 A.2d 514, 522–525 (1975).

Because the Coalition complied with the filing requirements of § 9–263, we have proceeded under the same assumption as the courts

**608**

### B.

 The defendants contend that the administrative proceedings prior to the issuance of the air quality control permit and the refuse disposal permit were not contested cases under the APA and were legislative in nature. Therefore, according to the petitioners, the Department's decisions to issue these permits were not subject to judicial review.

The APA provides, in § 10–215 of the State Government Article, that "[a] party who is aggrieved by a final decision in a contested case is entitled to judicial review of the decision...."

The Department of the Environment is a State agency to which the contested case and judicial review provisions of the APA are fully applicable. *See* §§ 10–201(b) and 10–202 of the State Government Article; *Sugarloaf v. Waste Disposal*, 323 Md. 641, 653, 594 A.2d 1115, 1120–1121 (1991). Consequently, if the administrative proceedings before the Department of the Environment were contested cases, a party before the agency, who has standing to maintain an action for judicial review, is entitled under the APA to judicial review of the Department's decisions.

A "contested case" is defined in the APA, § 10–201(c) of the State Government Article, as follows:

"*Contested case.*—'Contested case' means a proceeding before an agency to determine:

(1) A right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing; or

(2) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by law to be determined only after an opportunity for an agency hearing."

---

below and the parties in this case. Nevertheless, it would appear to us that, at least with respect to "orders" issued by the Secretary, § 9–263 has been superseded by the later enacted judicial review provisions of the APA.

A "license" is defined in the APA as including, *inter alia,* "an approval" or "a permit." *See* § 10–201(d)(3) of the State Government Article.

Therefore, under the plain language of the APA, an administrative proceeding involving the grant or denial of a permit is a contested case if some other law grants the opportunity of a hearing prior to the administrative determination.

Section 2–404(b) of the Environment Article requires that the Department "[p]rovide an opportunity for a public hearing" before issuing an air quality control permit to construct. Thus, the air quality control permit administrative proceeding was a contested case within the meaning of the APA. Moreover, in *Sugarloaf v. Waste Disposal, supra,* this Court took the position that the air quality control permit statutory scheme contemplated a contested case administrative proceeding before the issuance of an air quality control construction permit. We stated that "the State has chosen the construction permit approval stage as the point at which a hearing is required by law, thus meeting the definition of a contested case." *Sugarloaf v. Waste Disposal, supra,* 323 Md. at 656–657, 594 A.2d at 1122. Because the administrative proceeding is a contested case, a party at the construction permit hearing held before the agency, who is "aggrieved" by the agency's decision, is entitled to judicial review under the APA.

The statutory scheme for the issuance of a refuse disposal permit is found in § 9–201 *et seq.* of the Environment Article. Section 9–204(d) of the Environment Article requires a permit to be issued by the Secretary before a refuse disposal system can be constructed.[8] Before this

---

8. Section 9–204(d) provides:
 *"Permit is prerequisite.*—A person shall have a permit issued by the Secretary under this section before the person installs, materially alters, or materially extends a water supply system, sewerage system, or refuse disposal system."

permit can be issued the Secretary is required to hold a hearing. Section 9–209(a) states:

> "*Hearing required.*—Before the Secretary issues a permit to an applicant under § 9–204 of this subtitle to install, materially alter, or materially extend a landfill system, or an incinerator for public use to burn solid waste, the Department shall hold a public hearing on the application."

At this hearing the parties may "offer evidence and present arguments for or against the application." § 9–209(e). Nothing in these sections, either expressly or by clear implication, indicates that the hearing is not to be a contested case hearing. *See Sugarloaf v. Waste Disposal, supra,* 323 Md. at 666, 594 A.2d at 1127. Since the administrative proceeding involves the grant of a permit, and since the opportunity for an agency hearing is required by law, the application of the "contested case" definition in the APA leads to the conclusion that the administrative proceeding prior to the issuance of a refuse disposal permit is also a contested case for purposes of judicial review under the APA.

Contrary to the petitioners' repeated assertions in this case, the instant administrative proceedings were not "legislative" in nature. As discussed in the *Sugarloaf* case, 323 Md. at 670, 594 A.2d at 1126, even if an administrative proceeding involving the grant or denial of an air quality control permit, for a specific person or entity to construct a particular facility, were not subject to the APA, the administrative proceeding would still be "adjudicative" or "quasi judicial" and not "legislative" in nature. Consequently such an administrative proceeding, even if not subject to judicial review under the APA, would be subject to judicial review, of essentially the same scope, in an action for mandamus, certiorari, injunction or declaratory judgment. *See, e.g., Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500–506, 331 A.2d 55, 64–67 (1975), and cases there cited; *Heaps v. Cobb,* 185 Md. 372, 378–381, 45 A.2d 73, 76–77 (1945). *See also Dep't of Nat. Res. v. Linchester, supra,*

274 Md. at 224–225, 334 A.2d at 523–524, and cases there cited; *Report of the Commission To Revise the Administrative Procedure Act* 32 (Initial Report, September 1, 1992).

## IV.

■ We have determined that the administrative proceedings held in this case were contested cases under the APA. In order to be entitled to judicial review in a contested case, one must both be a "party" to the administrative proceedings and be "aggrieved" by the final decision of the agency.[9] *See* § 10–215 of the State Government Article.

■ The Coalition was a "party" at the administrative level. This Court held in *Morris v. Howard Res. & Dev. Corp.*, 278 Md. 417, 423, 365 A.2d 34, 37 (1976), as follows:

"Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of a matter being considered by the agency, thereby becomes a party to the proceedings."

---

9. The APA uses the term "aggrieved" to differentiate between those parties before the administrative agency who have a right to judicial review and those parties who do not. We have held that the statutory requirement that a party be "aggrieved" mirrors general common law standing principles applicable to judicial review of administrative decisions. *Bryniarski v. Montgomery Co.*, 247 Md. 137, 143–146, 230 A.2d 289, 294 (1966). Therefore, as in other types of cases, in order to have standing, the party ordinarily must have "a specific interest or property right.... [H]is interest therein must be such that he is personally and specifically affected in a way different from that suffered by the public generally." *Bryniarski v. Montgomery Co., supra*, 247 Md. at 144, 230 A.2d at 294.

With respect to standing under § 9–263 of the Environment Article, the Coalition does not in this Court argue that, by using the term "dissatisfied" rather than "aggrieved," § 9–263 embodies different standing principles than the judicial review provisions of the APA.

In *Morris,* we determined that, because Morris was present at the hearing and testified as a witness, he had established himself as a party before the administrative agency. *See also, Baxter v. Montgomery County,* 248 Md. 111, 113, 235 A.2d 536 (1967) (submitting name in writing as a protestant is sufficient); *Bryniarski v. Montgomery County,* 247 Md. 137, 143, 230 A.2d 289, 293–294 (1967) (testifying before the agency is sufficient); *Hertelendy v. Montgomery County,* 245 Md. 554, 567, 226 A.2d 672, 680 (1967) (submitting into evidence a letter of protest is sufficient); *DuBay v. Crane,* 240 Md. 180, 184, 213 A.2d 487, 489 (1965) (identifying self on agency record as a party is sufficient).

As stated in Part I of this opinion, the Coalition was present at the administrative proceedings conducted prior to the issuance of these permits, and offered both written and oral testimony opposing the medical waste incinerator. It follows, therefore, that the Coalition was a party to the administrative proceedings. As a party at the administrative level, the Coalition "remains a party to the proceedings [including judicial review] until [it] either abandons this status ... or is dismissed as a party by order ... generated by a motion to accomplish this result filed by an adverse party ...," *Morris v. Howard Res. & Dev. Corp., supra,* 278 Md. at 423, 365 A.2d at 37–38. *See also State Farm Mut. v. Ins. Comm'r,* 283 Md. 663, 668, 392 A.2d 1114, 1116–1117 (1978).

The Department and Medical Waste Associates did file a motion to dismiss the Coalition's actions for judicial review for lack of standing, arguing that the Coalition was not "aggrieved" by the Department's decision to issue the permits. The circuit court agreed, dismissing the Coalition's judicial review actions on the ground, *inter alia,* that the Coalition lacked standing.

■ Under Maryland common law principles, for an organization to have standing to bring a judicial action, it must ordinarily have a "property interest of its own—separate and distinct from that of its individual members." *Citizens*

*Planning and Housing Ass'n v. County Executive,* 273
Md. 333, 345, 329 A.2d 681, 687–688 (1974). *See Stocksdale
v. Barnard,* 239 Md. 541, 212 A.2d 282 (1965); *Bar Ass'n v.
District Title Ins. Co.,* 224 Md. 474, 168 A.2d 395 (1961);
*Southland Hills Improvement Ass'n v. Raine,* 220 Md.
213, 217, 151 A.2d 734, 736 (1959); *Norwood Heights Imp.
Ass'n v. Mayor & City Council of Baltimore,* 195 Md. 1, 72
A.2d 1 (1950); *Windsor Hills Imp. Ass'n v. Mayor and
City Council of Baltimore,* 195 Md. 383, 73 A.2d 531
(1950); *Md. Naturopathic Ass'n v. Kloman,* 191 Md. 626,
630–631, 62 A.2d 538, 539–540 (1948).

Moreover, if an individual or organization is seeking to
redress a public wrong, our prior cases have held that an
individual or an organization "has no standing in court
unless he has also suffered some kind of special damage
from such wrong differing in character and kind from that
suffered by the general public." *Rogers v. Maryland–
National Capital Park and Planning Comm'n,* 253 Md.
687, 691, 253 A.2d 713, 715 (1969), *quoting Weinberg v.
Kracke,* 189 Md. 275, 280, 55 A.2d 797, 799 (1947). *See also
Kerpelman v. Bd. of Public Works of Maryland,* 261 Md.
436, 443–445, 276 A.2d 56, 60, *cert. denied,* 404 U.S. 858, 92
S.Ct. 109, 30 L.Ed.2d 100 (1971); *Citizens Committee of
Anne Arundel Co. v. County Commissioners,* 233 Md.
398, 400–402, 197 A.2d 108, 109–110 (1964); *Glen Burnie
Imp. Ass'n v. State Appeal Bd.,* 213 Md. 407, 413, 132 A.2d
451, 454 (1957); *Ruark v. Engineers' Union,* 157 Md. 576,
588–589, 146 A. 797, 802 (1929); *Bauernschmidt v. Stan-
dard Oil Co.,* 153 Md. 647, 651, 139 A. 531, 533 (1927);
*Turner v. King,* 117 Md. 403, 408, 83 A. 649, 650–651 (1912);
*Houck v. Wachter,* 34 Md. 265, 269–273 (1871).[10]

---

**10.** The above-mentioned restrictions on standing do not necessarily
apply to a taxpayer. This Court has held that a person's or an
organization's status as a taxpayer entitles it to standing when the
challenged statute, regulation, or government action increases or
threatens to increase the taxpayer's tax burden. *See State v. Burning
Tree Club, Inc.,* 315 Md. 254, 292–293, 554 A.2d 366, 384–386 (1989);
*James v. Anderson,* 281 Md. 137, 142, 377 A.2d 865, 868 (1977);

In light of the foregoing principles, the circuit court correctly held that the Association did not have standing to remain a party in the judicial review actions.

■ The Court of Special Appeals in this case, while agreeing with the circuit court that the Coalition lacked standing to obtain judicial review under common law principles, remanded the case for a determination of whether the Coalition had standing in light of the enactment of the Maryland Environmental Standing Act. The Court of Special Appeals' remand order necessarily raises the question of whether the Environmental Standing Act applies to an action for judicial review of an administrative decision.

By Ch. 838 of the Acts of 1978, presently codified as Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), §§ 1–501 to 1–508 of the Natural Resources Article, the General Assembly enacted the Maryland Environmental Standing Act (MESA), which changed the Maryland common law requirements for standing in certain environmental judicial proceedings specified in the act. Prior to the present case, neither this Court nor the Court of Special Appeals has had an occasion to consider the impact of MESA.[11]

When it enacted MESA, the General Assembly found that "the natural resources and the scenic beauty of the State of Maryland are in danger of irreparable harm occasioned by

---

*Citizens Planning and Housing Ass'n v. County Executive,* 273 Md. 333, 329 A.2d 681 (1974); *Gordon v. City of Baltimore,* 258 Md. 682, 686–690, 267 A.2d 98, 101–102 (1970).

**11.** In *Leatherbury v. Gaylord Fuel Corp.,* 276 Md. 367, 347 A.2d 826 (1975), we considered whether the Environmental Policy Act, codified in Maryland Code, (1974, 1989 Repl.Vol., 1991 Cum.Supp.), §§ 1–301 to 1–305 of the Natural Resources Article, conferred upon the plaintiffs in that case standing to sue. Although the Act declared that "[e]ach person has a fundamental and inalienable right to a healthful environment, and each person has a responsibility to contribute to the protection, preservation and enhancement of the environment," § 1–302(d), we held that the General Assembly had not intended to create actionable rights under the statute and that the purposes of the act were to be accomplished by state agencies only. 276 Md. at 380–381, 347 A.2d at 834.

the use and exploitation of the physical environment," that "improper use and exploitation constitute an invasion of the right of every resident of Maryland to an environment free from pollution," that "the courts of the State of Maryland are an appropriate forum for seeking the protection of the environment," and that "an unreasonably strict procedural definition of 'standing to sue' in environmental matters is not in the public interest," § 1–502. The General Assembly declared that "[a]ny ... person, regardless of whether he possesses a special interest different from that possessed generally by the residents of Maryland, or whether substantial personal or property damages to him is threatened," has "standing to bring and maintain an action provided for in this section." § 1–503(a)(3) and (a)(1). "Person" is defined to include "any resident of the State of Maryland, any corporation incorporated under the laws of the State of Maryland, or any partnership, organization, association, or legal entity doing business in the State." § 1–501(b).

MESA allows an organization to have standing to sue in certain cases without regard to whether it has a property damage separate from that of its members. Moreover the Act allows a "person" to have standing without regard to whether the harm suffered by that "person" differs from the harm suffered by the general public. § 1–503(a)(3). These relaxed standing requirements apply only to "an action provided for in this section." § 1–503(a).

The key provision of the statute setting out the types of cases to which MESA applies is § 1–503(b). Section 1–503(b) states as follows:

"Any person given standing by subsection (a) of this section may bring and maintain an action for mandamus or equitable relief, including declaratory relief against any officer or agency of the State or political subdivision for failure on the part of the officer or agency of the State or political subdivision to perform a nondiscretionary ministerial duty imposed upon them under an environmental statute, ordinance, rule, regulation, or order, or for their failure to enforce an applicable environmental

quality standard for the protection of the air, water, or other natural resources of the State, as expressed in a statute, ordinance, rule, regulation or order of the State, or any political subdivision."

The above-quoted section clearly relaxes the standing requirements for certain actions filed in the courts of this State that request mandamus or equitable relief, including a declaratory judgment. Thus a "person" may bring a mandamus or declaratory judgment action against any officer or agency of the State or political subdivision for failure to perform a nondiscretionary ministerial duty imposed by environmental statutes, ordinances, rules, regulations or orders. In addition, one may bring an action against an officer or agency of the State or a political subdivision to compel the enforcement of an environmental quality standard imposed by an environmental statute, ordinance, rule, regulation or order. § 1–503(b). The court may join as a defendant any individual or organization against whom the plaintiff is requesting that governmental action be taken. § 1–503(b).

MESA expressly provides that it does not create any new substantive causes of action, § 1–504(a),[12] and does not allow recovery of monetary damages. § 1–504(c).[13] More-

---

**12.** Section 1–504(a) provides:

"This subtitle may not be construed to create or authorize any new substantive cause of action or theory of recovery not now recognized by the courts of this State, nor may it be construed as abrogating any cause of action or theory of recovery now recognized by the courts of this State but is for the sole purpose of providing standing to sue to the persons set forth in § 1–503 of this subtitle, subject to the provisions and limitations set forth in this subtitle."

**13.** Section 1–504(c) provides:

"This subtitle does not authorize an action for monetary damages. The remedies available to any plaintiff who acquires standing to sue solely by virtue of this subtitle are limited to mandamus or equitable relief, including declaratory relief as to whether a permit or order has been unlawfully issued or is being violated, and a judgment or decree for monetary damages may not be awarded. However, a judgment for monetary damages may be awarded in any

over, relief may not be granted under MESA if the defendant shows that the activity complained of is in compliance with a current, lawful permit issued by an agency of the United States, the State or a political subdivision or is in compliance with a court order. § 1–504(f).[14]

The purpose of MESA was to relax Maryland common law standing requirements in particular types of actions specified in the statute. Therefore, if the Coalition brought suit seeking mandamus or equitable relief against any officer or agency of the State or political subdivision for failure to perform a nondiscretionary ministerial duty imposed by environmental statutes, ordinances, rules, regulations or orders, it would have standing without regard to whether it had a property damage separate from that of its members or whether the harm suffered by the Coalition differed from the harm suffered by the general public. Likewise, if the Coalition had brought an action against an officer or agency of the State or political subdivision to compel the enforcement of an environmental standard imposed by an environmental statute, ordinance, rule, regulation or order, it would have standing.

Each of the avenues pursued by the Coalition in this case, however, involved a request for direct judicial review of an administrative agency decision. Therefore, what the facts

---

action where a judgment is appropriate to a plaintiff who has standing to sue other than by virtue of this subtitle."

**14.** Section 1–504(f) provides:

"(1) Except as provided in this subtitle, relief may not be granted in any action filed under this subtitle with respect to any defendant who shows that the condition, activity, or failure complained of is under and in compliance with:

(i) A lawful, current permit or order of an agency of the State or a political subdivision authorized to issue the permit or order;

(ii) An order or other adjudication of a court of competent jurisdiction in a proceeding in which all of the material issues involved in the action were raised and determined, whether or not the parties to the prior litigation were identical to the parties in the pending action; or

(iii) A lawful current permit or order of an agency of the United States government authorized to issue the permit or order."

of this case require us to determine is whether the General Assembly in enacting MESA intended to relax the standing requirements for the participation of organizations such as the Coalition in an action for judicial review of an administrative decision under an environmental statute or regulation.

MESA expressly delineates the types of actions to which it applies in § 1–503(b). Section 1–503(b) does not expressly include judicial review of an administrative proceeding. It is true that, as previously discussed, in the absence of a statutory provision authorizing judicial review, an adjudicative or quasi judicial administrative proceeding is subject to judicial review in an action for a writ of mandamus, for an injunction, or for a declaratory judgment. Nonetheless, most judicial review actions are statutorily authorized, particularly by the judicial review section of the APA. Consequently, if the General Assembly had intended that § 1–503(b) encompass actions for judicial review of administrative proceedings, it almost certainly would have referred to "judicial review" actions in § 1–503(b).

Moreover, although the available Maryland legislative history sheds little light on the intent of the General Assembly on this point, a comparison of MESA with the environmental standing acts of other states confirms the view that MESA does not broaden standing requirements in actions for direct judicial review of administrative proceedings. Approximately ten states have adopted similar environmental standing acts. Michigan was the first state to enact such legislation, and its "Environmental Protection Act of 1970" has been used as a model for other states, including Maryland. *See* K. Siegert, *The 1978 Maryland Environmental Standing Act*, 8 U.Balt.L.Rev. 411 (1979); *Ray v. Mason County Drain Comm'r*, 393 Mich. 294, 298, 224 N.W.2d 883, 884 (1975).

The 1970 Michigan statute expressly encompasses judicial review of an administrative proceeding, stating (Mich.Comp. Laws Ann. § 691.1205 (1979, 1987 Repl.Vol.) (emphasis added)):

"(1) Whenever administrative, licensing or other proceedings, *and judicial review thereof* are available by law, the agency or *the court may permit* the attorney general, any political subdivision of the State, any instrumentality or agency of the state or of a political subdivision thereof, *any* person, partnership, corporation, association, *organization* or other legal entity *to intervene as a party* on the filing of a pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is likely to have, the effect of polluting, impairing or destroying the air, water, or other natural resources or the public trust therein."

Several other state environmental standing acts explicitly apply to judicial review of administrative proceedings. *See, e.g.,* Conn.Gen.Stat.Ann. § 22a–19 (West Supp.1989) ("In any administrative, licensing or other proceeding, and in judicial review thereof made available by law ... any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state"); Fla.Stat. Ann. § 403.412(5) (West 1986); Ind.Code Ann. § 13–6–1–1(d) (Burns 1973, 1990 Repl.Vol.); Minn.Stat.Ann. § 116B.09 (West 1987) ("[I]n any administrative, licensing, or other similar proceeding, and in any action for judicial review thereof, ... any natural person ... or any partnership, corporation, association, organization or other legal entity ... shall be permitted to intervene as a party upon the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct that has caused or is likely to cause pollution, impairment or destruction of the air, water, land or other natural resources located within the state"); S.D. Codified Laws Ann. § 34A–10–2 (1977, 1992 Repl.Vol.).

Thus, numerous states which have environmental standing statutes similar to MESA have expressly provided for expanded standing in actions to review administrative proceedings. The General Assembly's deletion of this provision strongly indicates that it did not intend such a result.

Furthermore § 1–504(c), which describes limitations upon the remedies available to a plaintiff under MESA, states in relevant part as follows:

"... The remedies available to any plaintiff who acquires standing to sue solely by virtue of this subtitle are limited to mandamus or equitable relief, including declaratory relief as to whether a permit or order has been unlawfully issued or is being violated...."

Section 1–504 also provides in relevant part as follows:

"(f)(1) Except as provided in this subtitle, relief may not be granted in any action filed under this subtitle with respect to any defendant who shows that the condition, activity, or failure complained of is under and in compliance with:

"(i) A lawful, current permit or order of an agency of the State or a political subdivision authorized to issue the permit or order;

\*　　\*　　\*　　\*　　\*　　\*

"(iii) A lawful current permit or order of an agency of the United States government authorized to issue the permit or order."

Thus, with respect to permits, MESA refers only to "declaratory relief" as to whether a permit was lawfully issued or is being violated, and precludes relief if the challenged activity is under and in compliance with a lawful current permit. This language indicates that the General Assembly contemplated that a MESA action relating to a permit would be separate and distinct from the administrative-judicial review permitting process. In addition, the grounds set forth in MESA for challenging a permit appear to be narrower than the scope of review in an action for direct judicial review of the administrative decision which initially

grants a permit. A MESA action challenging a permit seems to be limited to whether the permit is current and "lawful" or "lawfully issued." In an action for judicial review of an administrative decision granting a permit, however, the court determines not only whether the agency's decision to issue the permit was in accordance with law, but also whether the particular administrative decision was arbitrary, capricious or unsupported by substantial evidence in light of the record as a whole. With regard to administrative decisions granting permits and other administrative orders, MESA seems to authorize an independent enforcement action. It does not appear to be applicable to the administrative-judicial review proceedings themselves.

There is other language in MESA, however, which does seem to support the argument that standing in actions for judicial review of administrative proceedings has been broadened. For example, § 1–504(d) provides (emphasis added):

"This subtitle does not abrogate the existing requirement and principles of exhaustion of administrative remedies, and this subtitle does not broaden, *except as specifically set forth,* the rights of intervention of persons in administrative hearings *and in appeals from the hearings.*"

This section implies that the right to intervene in an administrative proceeding and in an action for judicial review thereof has been broadened by the enactment of MESA, "as specifically set forth." [15] Nevertheless, § 1–503(b), which delineates the types of actions to which MESA applies, does not "specifically set forth" actions for judicial review of administrative decisions. MESA does provide, however, that after an enforcement action has been filed under MESA, the circuit court "may remand the matter to the

---

15. The language of § 1–504(d) also does not distinguish between standing to be a party at the administrative level and standing to be a party in an action for judicial review. As previously discussed, Maryland administrative law generally does distinguish between the two. *See Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 365 A.2d 34 (1976).

agency with instructions to consider and make factual determinations with respect to the material issues." § 1–504(f)(2).[16] Consequently, what § 1–504(d) may be referring to is that, under § 1–504(f)(2), a person who had standing to bring an enforcement action under MESA would not be stripped of that standing if the circuit court sent the matter to the appropriate agency for factual determinations. On the other hand, there may simply be some inconsistency between §§ 1–503(b) and 1–504(d). If there is an inconsistency, it would seem that the section delineating the types of actions to which the statute applies should prevail.

Although MESA may have some inconsistent provisions, on balance, in light of the description of the actions to which it applies, and in light of the Maryland General Assembly's deletion of the provision found in other state statutes encompassing judicial review actions, we hold that MESA does not ordinarily grant organizations, who do not have standing under the common law principles reflected in the judicial review section of the APA, standing to participate in judicial review of an administrative decision. Therefore, we hold that the Court of Special Appeals erred in remanding the case for a determination of whether the Coalition had standing under MESA, as MESA does not apply to the present judicial review actions.[17]

---

16. Section 1–504(f)(2) states:
 "If the court finds, upon clear and convincing evidence at any stage of the proceeding, that the condition, activity, or failure complained of exists and either presents an imminent danger to the health, welfare, or safety of the people of the State, or results in or is likely to result in irreversible or irreparable damage to the air, water, or other natural resources of the State, the court may remand the matter to the agency with instructions to consider and make factual determinations with respect to the material issues, as determined by the court, within a time considered reasonable by the court. A finding may not be made until the defendant has been provided an opportunity by the court to present evidence rebutting the plaintiff's evidence."

17. Since we have determined that MESA does not provide for expanded standing in an action for judicial review, we need not address the Department of the Environment's additional argument that the Court

## V.

██ Finally, the Coalition argues that this Court should adopt what it described as the position of the federal courts with regard to standing for environmental organizations. *See, supra,* note 3. Whatever merit or lack of merit this argument might have in another context, the General Assembly has enacted a comprehensive statute expanding standing for environmental organizations in some cases and refraining from expanding such standing in other environmental cases. The General Assembly comprehensively set forth in MESA the public policy of this State with respect to standing requirements for judicial actions in environmental matters. If we were to broaden the common law principles of standing for judicial review of administrative decisions in the environmental area, we would be contradicting the policy decisions made by the General Assembly in MESA. Such a judicial decision could not be squared with the statute. As we have often stated in the past, "common law principles should not be changed contrary to the public policy of the State set forth by the General Assembly of Maryland." *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 141, 497 A.2d 1143, 1151 (1985). *See, e.g., Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 460–461, 456 A.2d 894, 901–902 (1983); *Condore v. Prince George's County,* 289 Md. 516, 532, 425 A.2d 1011, 1019 (1981); *Austin v. City of Baltimore,* 286 Md. 51, 54–58, 405 A.2d 255, 257–259 (majority opinion), 286 Md. at 67–70, 405 A.2d at 264–265 (Smith and Eldridge, JJ., concurring) (1979).

Consequently, it would be inappropriate for this Court to expand, beyond that set forth in MESA, organizational standing in judicial actions concerning environmental matters.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENTS

---

of Special Appeals erroneously decided that the conditions precedent to filing an action under MESA had been met.

OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPE-CIAL APPEALS TO BE PAID BY THE MARYLAND WASTE COALITION, INC.