# HERTELENDY *v.* MONTGOMERY COUNTY BOARD OF APPEALS, ET AL.

[No. 52, September Term, 1966.]

*Decided February 23, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Joseph A. Mattingly* for appellant.

*John W. Neumann,* with whom were *Kardy, Brannan & Neumann* on the brief, for Nathan Landow, one of appellees; *Paul A. McGuckian, Assistant County Attorney,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for Montgomery County Board of Appeals, other appellee.

BARNES, J., delivered the opinion of the Court.

On an appeal from a decision of the Montgomery County Board of Appeals (Board) granting a variance to Nathan Landow (contract purchaser or Landow), one of the appellees, for a front yard of 50 feet for a lot in Bethesda, Montgomery County (the Landow lot or Lot 23-B), the Circuit Court for Montgomery County (Shook, J.) granted a motion of the Board to dismiss the appeal of Emery Hertelendy, the appellant, who owns two lots, one improved by his dwelling and the other vacant, directly across the street from the Landow property. The

lower court held that Hertelendy had not shown in his petition for appeal that he was a person aggrieved by the action of the Board and, from the facts, that he was not a party to the proceeding before the Board. The lower court also denied Hertelendy's petition to amend his petition for appeal. From a judgment in favor of the appellees for costs, an appeal to this Court was timely taken. We are of the opinion that the lower court erred in both rulings.

The Landow lot, Lot 23-B in the Subdivision of the Haney Tract in the town of Bethesda, is located at the northeast corner of the intersection of Arrowood Road (Avenue on the original plat) and Redwood Avenue. The lot contains approximately 30,500 square feet and is pie-shaped. The curved "base" of the triangularly shaped lot is at the intersection of Arrowood Road and Redwood Avenue and is 241.72 feet curving gently from east to north. The frontage is approximately equal on the two streets. The northerly line of the triangle is 258.1 feet and the easterly line is 241.4 feet. The lot was created on May 1, 1958. It is zoned R-R (Rural Residential) and the lots in the general area are similarly zoned. In an R-R zone, the main building and its accessory buildings must be located on a lot having an area of at least 20,000 square feet and not more than 25% of the net area of the lot may be covered by buildings. The zoning ordinance further provides in regard to front yards as follows:

> "Each lot shall have a front building line at least forty feet from and parallel to the front lot line or a proposed street line if such has been established within the lot to provide a front yard. In cases where the majority of lots located on one side of a street between two intersecting streets have been occupied by buildings having a front building line different from the one above stated, any building hereafter erected shall not project beyond the line previously established by these buildings, *if erected within three hundred feet of any existing building."* (Emphasis supplied).

The portion of the front yard provision in italics did not appear in the similar provision in the Montgomery County Code of 1955.

The provision for front yards in the R-R zone, containing the italicized portion, was included in Ordinance of Montgomery County No. 3-206, dated May 31, 1958 and effective June 1, 1958. This ordinance was adopted for that portion of the Maryland-Washington Regional District in Montgomery County and since the entire County is now in the Regional District, that ordinance has county-wide application.

On December 12, 1964, Landow signed a contract of sale to purchase Lot 23-B for $29,800, making a down-payment of $2,000. Paragraph 4 of the Addendum to this contract of sale provided that Landow, as purchaser, should proceed in a reasonably expeditious manner to make preliminary plans for a single dwelling house, with recreational facilities, to be used on Lot 23-B. Paragraph 4 further provided that in the event Landow discovered set-backs which would prevent the construction of the structure he deemed most desirable, the purchaser, Landow, "shall have the right, with the full cooperation of the Seller, and at Purchaser's sole expense," to apply to the Board "for a variance for such set-back or other restriction, and in the event complete relief" were not granted to the purchaser, he should have the right to waive the provisions of Paragraph 4 or to terminate the contract of sale and recover his deposit.

Landow had a site plan prepared showing the proposed dwelling and swimming pool. This site plan, dated March 16, 1965, was prepared by Donald Hudson Drayer, A.I.A., an architect, and shows a large single residence one-story ranch type dwelling with a kidney-shaped swimming pool in the rear yard—the apex of the triangle. There is a central portion of the dwelling facing the two streets. This central portion is approximately 81 feet wide, and 38 feet deep. There are two large wings. The easterly wing which fronts on Arrowood Road is 40 feet wide with a depth of 50 feet. The northerly wing which fronts on Redwood Avenue has a frontage of 24 feet and a depth of 62.75 feet. The easterly wing has a set-back of 50 feet from Arrowood Road and the northerly wing has a set-back of 50 feet from Redwood Avenue. The central portion of the dwelling has a set-back of approximately 68 feet. There is a terrace in the rear of the whole dwelling and to the east of the terrace is the pool area. The pool, itself, is approximately 50 feet long by approximately 30 feet at its widest point.

Lot 23-A to the east of the Landow lot (Lot 23-B) is improved by a structure which has a set-back of 85 feet from Redwood Avenue. The lots to the south of the Landow lot—lots 24 to 32, respectively, are improved with structures having various set-backs from Arrowood Road. These set-backs are as follows: Lot 24 (immediately adjoining Lot 23-B on Arrowood Road) 101.5 feet; Lot 25, 140 feet; Lot 26, 128.7 feet; Lot 28, 120.46 feet; Lot 29, 115.71 feet; Lot 30, 119.4 feet; Lot 31, 105 feet; and, Lot 32, 35 feet.

On March 31, 1965, Landow filed with the Department of Inspection and Licenses an application for a building permit for the proposed structures and attached the site plan as an exhibit. On the same day, the Building Inspector disapproved the application on the ground that it violated Section 104-7(d)(4) of the Zoning Ordinance (Sec. 111-7(a) of the Montgomery County Code of 1965) in that the "Proposed building projects beyond line previously established by existing building."

Also on March 31, 1965, Landow executed an "Appeal for Variance Under Zoning Ordinance" indicating that he desired a variance from the front yard requirements so that he would have a set-back of 50 feet for the front yard. It was stated in the appeal form that the sub-division plat was recorded on May 1, 1958, and that exceptional narrowness, shallowness or shape of lot was claimed. Landow in listing "Adjoining and Confronting Owners"—to whom notice of the appeal is required to be given by the Zoning Ordinance—gave the owners of Lots 23-A and 24 as well as Hertelendy, the owner of Lots 10 and 11, and also listed the owners of Lots 12 and 22.

The Board gave notice of the hearing on April 29, 1965 of the appeal to those entitled to receive it by mailing a written notice on April 13, 1965, which was apparently received by those notified, including Hertelendy, on April 14, 1965, as the Board mailed a notice to itself which was received on that date.

The hearing of the appeal was heard on April 29, 1965, in accordance with the notice. At the hearing, counsel for Landow when pressed by the Chairman in regard to whether Landow was contesting the correctness of the action of the Building Inspector or was seeking a variance declined (in effect) to elect, stating that the Board could find that no line had been estab-

lished by the existing buildings but if this were found to be established, a variance to allow a set-back of 50 feet was desired. It was stated that the Building Inspector believed the set-back for the front yard should be governed by the buildings on Arrowood Road and should be 101.5 feet. Mr. Drayer, the architect, testified that the combined house and lot values in the area would be between $60,000 to $100,000 that more than 50% of the houses were one-story rambler types and that a minor number of houses along Arrowood Road were two-story dwellings. After describing the proposed house and swimming pool, Mr. Drayer testified that it complied with the 25% coverage provision, but that to have a set-back of 101.5 feet would prevent the erection of a nice house on the lot which would have any recreational facilities in the back yard. In his opinion, the shape of the lot created a hardship in that a dwelling in keeping with the neighborhood could not reasonably be erected with such a set-back and the erection of a house not in keeping with the neighborhood would not be saleable. He also testified, in effect, that the proposed variance would not substantially impair the intent, purpose and integrity of the general plan for Montgomery County as embodied in the Zoning Ordinance.

Hertelendy, who had to be out of town at the time of the hearing, wrote a letter to the Board on April 26, 1965, identifying his property as 7224 Arrowood Road directly across from Lot 23-B. He set out the relevant facts in regard to some of the set-backs on Arrowood Road and vigorously opposed the granting of a variance to Landow to set-back 50 feet. He stated that in his opinion, the erection of a large residence without a greater set-back than 50 feet "would cause a decrease in the market value of my property and would probably also [cause] a decrease in the value of my vacant lot 10 to the east." He requested the Board to deny the appeal and in view of his required absence from town "to accept this letter in lieu of my appearance, in opposition" to the appeal of Landow. This letter was received into evidence by the Board as Exhibit No. 6.

The Board by a four to one vote, granted the variance, filing written opinions on May 11, 1965. The majority opinion indicated that the front yard provision in the R-R zone was "intended for *uniform, rectangular* lots of similar size and shape"

and that Landow's lot "does not fall into category." The majority was further of the opinion that because of the tri- angular shape of the lot, there was a hardship justifying the grant of the variance and that such a variance was necessary so that the lot could "be properly buildable", and that "the rear yard would be practically non-existent if this variance were not permitted, and that a house of this size and cost will in- crease, rather than depreciate, the value of those houses near- by, and that there will be no substantial impairment of the in- tent, purpose and integrity of the General Plan."

A dissenting opinion indicated that the exceptional and un- due hardship required to be shown for a variance had not been established as the lot was of "adequate size to build a home comparable in size and quality to the established level of the neighborhood without requiring any variances."

It is significant that copies of both the majority and dissent- ing opinions of the Board were sent to all persons, including Hertelendy, who had received notice of the hearing.

On May 27, 1965, counsel for Hertelendy filed with the Board a petition for rehearing alleging errors in proceeding when insufficient notice had been given, that the Board erred in granting the variance and in any event, the Board had no power to grant the variance since the lot was created after the original provision in regard to front yards in an R-R zone was adopted as appeared in the Montgomery County Code of 1955. It was also alleged in the motion that the swimming pool was an accessory building and must be considered in calculating the 25% of the lot coverage and this was not done. The Board dismissed the motion for a rehearing on June 3, 1965.

The applicable provision of the Montgomery County Code in regard to appeals to the Circuit Court for Montgomery County provides:

> "Any decision by the county board of appeals may, within thirty days after the decision is rendered, be appealed *by any person aggrieved by the decision of the board and a party to the proceeding before it,* to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse

such decision, *with* or without *remanding the case for rehearing as justice may require.* Whenever any such appeal is taken a copy thereof shall be served on the board by the clerk of the court and the board shall promptly *give notice of the appeal to all parties to the proceeding before it* and shall, within fifteen days after the filing of the appeal, file with the court the originals or certified copies of all papers and evidence presented to the board in the proceeding before it, together with a copy of its opinion which shall include a statement of the facts found and the grounds for its decision * * *. (Emphasis supplied.) See Montgomery County Code, sec. 2-92 (1965).

Hertelendy, on June 9, 1965, filed a petition for an appeal from the Board's decision of May 11, 1965 and also from its dismissal of his motion for a rehearing on June 3, 1965. In his petition, Hertelendy alleged the prior facts and recited that "Aggrieved by this decision (the granting of the variance by the Board) the appellant herein requested a rehearing on this matter which was denied by" the Board. Various alleged errors are set forth in detail and Hertelendy prayed that the variance be vacated and the case remanded for a rehearing before the Board, or, in the alternative, the variance be vacated without such a remand, and that the petitioners have other relief.

The Board, on June 10, 1965, gave notice of the appeal to the Circuit Court for Montgomery County to counsel for Landow, *counsel for Hertelendy,* various public officers, the State Roads Commission, the Board of Education and members of the Board.

Landow filed a motion to intervene on June 17, 1965, and this motion was granted on June 24. He filed his answer to the petition for appeal on June 30. In Paragraph 8 of his answer, Landow alleged that the petition was improperly filed and should be dismissed because it did not show that the appellant was a party aggrieved and a party to the proceeding appealed.

Montgomery County was granted leave to intervene on July 6 and on the same day, filed a motion to dismiss the petition for appeal alleging that the petitioner was not a party to the proceeding before the Board, and the submission of the letter

from Hertelendy was "not sufficient to invest him with that stature."

The appeal came before the Circuit Court for hearing on December 27, 1965. The lower court gave the petitioner leave to file a memorandum before January 11, 1966. On January 11 the petitioner filed a motion to amend the petition for appeal to state that he was a party aggrieved, and that such an allegation was fully supported by the record, but counsel for the petitioner omitted the allegation in drafting his first petition of this nature by using as a form a prior petition for appeal which omitted this allegation.

Hertelendy filed an elaborate written memorandum with the Circuit Court on January 11. On January 17, Landow filed an answer in opposition to allowing the motion to amend and a memorandum in support of his position. Montgomery County and the Board filed a "motion" in opposition to the motion to amend and on January 18 filed an answer to the petition for appeal. They also filed a memorandum on January 18 in support of their motion to dismiss the petition for appeal.

The memoranda of January 11, 17 and 18 were included in the record pursuant to an order of this Court dated May 4, 1966, upon the motion of the appellant alleging that two of the memoranda were necessary to show that the appellant had raised certain questions which were not decided by the lower court. Unfortunately all of these memoranda are printed *in full* in appellant's appendix and in large part duplicate material in the briefs.

The lower court filed a written opinion and order on February 10, 1966, which, as we have already indicated, denied the petition to amend and dismissed the petition for appeal.

In our opinion, the lower court should not have granted the motion of Montgomery County and the Board to dismiss the petition for appeal and should have granted the appellant's petition to amend. Our recent decision in *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 225 A. 2d 294—rendered after the decision of the lower court — is decisive of these two rulings.

In *Town of Somerset* the appellants filed an order for appeal with the Board which did not allege that the appellants were

aggrieved by the decision of the Board, but stated that "it was filed pursuant to Rules B1, *et seq.* of the Maryland Rules of Procedure." Later the appellants filed a petition for appeal in the Circuit Court in support of the order for appeal, containing the same allegations. The petition set out in detail the grounds for appeal. The appellee who had been granted a special exception by the Board, and the Board, itself, filed demurrers to the petition under Maryland Rule B9 alleging that the petition failed to allege that the appellees were aggrieved parties or had sustained any damages from the granting of the special exception; that the appellants were too far removed from the property to constitute them aggrieved parties. Also, in *Town of Somerset,* as in the present case, the appellants moved for leave to amend their petition for appeal to allege that they were parties before the Board, were aggrieved and that one of the appellants owned and resided in property approximately one block from the subject property and others were property owners in the vicinity and would be specially damaged if the building authorized by the special exception were erected. The lower court in *Town of Somerset* sustained the demurrers and declined to grant the motion to amend after reviewing the questions of law raised by the petition and finding them to be without merit. We reversed, holding that the demurrers were improperly overruled and that it was an abuse of discretion for the lower court to have refused to grant the motion to amend the petition.

### (1) Granting the motion to dismiss

In *Town of Somerset,* Judge Oppenheimer, for the Court, stated:

> "The petition of appeal did not in terms allege that the appellants were persons aggrieved by the Board's order. It did, however, state that the appeal was filed pursuant to Maryland Rules B 1 through B 12. The order for appeal, in support of which the petition was filed, contained the same statement. The pertinent Rules, therefore, were incorporated by reference in both the order and the petition. Rule B 3 states that an appeal may be taken 'by a person now or hereafter authorized by statute to appeal.' The applicable statute au-

thorizes appeals by a 'person aggrieved by the decision.' Montgomery County Code, Section 2-88 (1960) (now Section 2-92, 1965 recodification). See *Pattison v. Corby*, 226 Md. 97, 100, 172 A. 2d 490 (1961). It is a reasonable implication of the order and the petition that the appeal is taken by aggrieved persons, for only such persons are authorized to take an appeal under the Rules pursuant to which the appellants state they are acting."

In the present case, in referring to the decision of the Board in granting the variance, the appellant alleged in the petition for appeal: *"Aggrieved by this decision, the appellant herein* requested a rehearing on this matter which was denied." (Emphasis supplied). It is obvious that if the appellant was *"aggrieved"* by the Board's decision and sought a rehearing for that reason, he is also an aggrieved party for the purpose of appeal in the Circuit Court. This implication is equally as strong as it was in *Town of Somerset,* and the "motion to dismiss" should have been overruled as the demurrers should have been in *Town of Somerset.*

There is no question that the appeal from the Board's decisions was timely taken and due notice was given of the taking of the appeal. As Judge Oppenheimer, aptly stated, for the Court, in *Town of Somerset*:

"Where there is compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights. *Board of County Comm'rs v. Kines,* 239 Md. 119, 125, 210 A. 2d 367 (1965); *Irvine v. Montgomery County,* 239 Md. 113, 117, 210 A. 2d 359 (1965). Because of the factors to which we have referred, we think that the appellants' failure to allege expressly in the petition of appeal that they were aggrieved parties whose property interests are or will be adversely affected by the Board's order was, at most, such a technical irregularity. The demurrer should have been overruled."

We add that we know of no provision of the Maryland Rules which provides for a "motion to dismiss" a petition for appeal. The proper practice is to file a demurrer if the petition is deemed to be insufficient in its allegations as was done in *Town of Somerset*. We will treat the motion to dismiss as a demurrer for the purposes of this case.

### (2) Failure to grant the petition to amend

In our opinion, the observations by Judge Oppenheimer, for the Court, in *Town of Somerset*, are quite applicable to the present case. He stated :

"Maryland Rule 320 d 1 (b) provides that 'an amendment shall not be made without leave of court but leave to amend shall be freely granted in order to promote justice.' We have repeatedly held that an order denying or allowing amendment will not be reviewed in the absence of a clear showing of an abuse of discretion. *Blevins v. Mullan Contracting Co.*, 235 Md. 188, 194, 201 A. 2d 348 (1964) ; *Carder v. Steiner*, 225 Md. 271, 277, 170 A. 2d 220 (1961), and cases therein cited. We re-affirm that rule, but, in this case, we are constrained to hold that in denying leave to amend the court below went beyond the proper limits of discretionary action.

"Ordinarily, our holding that the demurrer to the petition of appeal should have been overruled would make moot the question of the judge's refusal to permit the requested amendment. However, the appellants' request to amend the petition by making the allegations set forth was proper and perhaps necessary. The requested amendments were specific allegations as to the aggrievement of each of the appellants. The allegation in the petition which, as we have held, implied that they were aggrieved parties, without the supporting details of the requested amendments, of itself might not have been sufficient for them to show why they had standing to appeal. Had the motion been granted, the issue as to standing would have been clarified by the raising of pertinent questions of fact and law and

the administration of justice would thereby have been served."

In the present case, the petition to amend was filed approximately six months after the "motion to dismiss" was filed. However, it was filed promptly after the hearing in the case and within the time fixed by the lower court for filing a memorandum by the appellant. Due notice of the filing of the petition to amend was given, pleadings and memoranda in opposition to granting leave to amend were duly filed more than three weeks prior to the decision of the lower court. There was no prejudice resulting from the delay in filing the petition to amend and the lower court had ample time to consider the petition and the pleadings in opposition to it and, in fact, did consider them in its opinion.

The lower court in the present case did not consider the merits of the questions raised in the petition for appeal—as the lower court did in *Town of Somerset*—so that there has been no determination of these issues.

It is clear to us that the record indicates that the appellant was a "party" to the proceedings before the Board. The filing of the letter of August 26, 1965 by the appellant and its acceptance into evidence by the Board were sufficient to make Hertelendy a party to the proceeding. It is not required that he personally appear or personally testify at the hearing. He had registered his objections to the granting of the variance, his reasons for his objection and showed the location of his property across the street from Lot 23-B as well as the resulting injury to the value of his property which would allegedly result if the Board granted the variance. It is obvious that the Board considered Hertelendy to be a party and a party aggrieved. It did not dismiss the motion for the reargument because of lack of status on his part, but because the motion did not set forth any "new evidence" which could not reasonably have been presented at the hearing. Then too, when the appeal was taken by Hertelendy to the Circuit Court, the Board, pursuant to Sec. 2-92 of the Montgomery County Code (1965) above quoted, gave his counsel notice of that appeal along with counsel for Landow and interested officials, thereby indicating

that the Board considered Hertelendy to be a party to the case before it.

Ordinarily we would reverse and remand the case to the lower court with directions to overrule the motion to dismiss, to grant the petition to amend and if the issue of standing were then raised, to take testimony on that issue. As Judge Oppenheimer stated, for the Court, in *Town of Somerset*:

> "When the issue of the standing of an appellant to appeal is raised in the court in which review of the administrative action is asked, we have approved the practice of trial judges in permitting testimony on the point to be taken before them, see e.g., *Chatham Corp. v. Beltram,* 243 Md. 138, 148, 220 A. 2d 589 (1966) and *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966). The question is not one of taking additional testimony on the merits of the substantive issues decided by the Board (compare *Suburban Properties, Inc. v. Rockville Council,* 241 Md. 1, 5-6, 215 A. 2d 200 (1965) and cases therein cited), but of determining whether the appellants have the requisite standing to have those issues reviewed."

In the present case, however, we think further consideration should be given by the Board to the issues raised before it and a determination of these issues made by it.

In the first place, it is not clear in the record before the Board at what date the provisions of the Zoning Ordinance relating to front yard set-backs applied to Landow's Lot 23-B. Section 104-22(a)(1) of the Montgomery County Code (1960) gives the Board the power to grant variances from the strict application of the chapter—

> "[W]hen by reason of exceptional narrowness, shallowness, or shape of specific parcels of property *at the time of the original enactment of this chapter or amendments thereto* or by reason of exceptional topographical conditions or other extraordinary situations or conditions of specific parcels of property, the strict application of these regulations or amendments thereto would result in peculiar and unusual practical difficul-

ties to, or exceptional or undue hardship upon the owner of such property; provided that such relief or variance can be granted without substantial impairment of the intent, purpose, and integrity of the general plan, as embodied in this chapter." (Emphasis supplied).

Section 111-30(a)(1) of the Montgomery County Code (1965) is substantially the same except it is even more explicit in regard to time as it provides:

"* * * by reason of exceptional narrowness, shallowness or shape of specific parcels of property *on June 1, 1958 or at the time of amendments to this chapter. * * *."* (Emphasis supplied).

On the remand, the Board should consider and determine whether Lot 23-B was created prior to the applicable provision of the Zoning Ordinance or after the effective time provided for in the Zoning Ordinance, bearing in mind that the Lot 23-B was created on May 1, 1958.

It will be important to consider whether Ordinance of Montgomery County No. 3-206, dated May 31, 1958, effective June 1, 1958 was a repeal of the original enactment of the then existing Zoning Ordinance and the enactment of a new Zoning Ordinance (see the Editor's note to Chapter 104 of the Montgomery County Code (1960)) or whether it is merely a repeal and re-enactment with amendments of the then existing Zoning Ordinance, resulting in a continuation—where not amended —of the then existing Zoning Ordinance. See the language of Section 1 of Ordinance No. 3-206. Assuming, Ordinance No. 3-206 is an *amendment* of the then existing Zoning Ordinance, the Board should nevertheless consider whether the date of the amendment—June 1, 1958—might possibly be the determining date in view of the above-quoted provisions of Section 104-22(a)(1) of the Montgomery County Code (1960) and Section 111-30(a)(1) of the Mongomery County Code (1965).

Secondly, it is not clear from the record whether the question of a possible error in the Building Inspector's construction of the front yard set-back provision was before the Board for decision and if it was, whether that construction was cor-

rect in the present case. We have indicated that counsel for Landow considered this question to be before the Board and pressed the point that no front building line had been established by the buildings erected on the lots on the east side of Arrowood Road to the south of Lot 23-B. There is some suggestion in the majority opinion of the Board that there had been no building line established, but this is not clearly set forth in the opinion, and should be clarified by the Board upon the remand. In this connection it may be important to ascertain *when* the buildings on Lots 24 to 32—varying in set-backs from 35 feet to 140 feet—were erected as compared with May 1, 1958 when Lot 23-B was created. If the buildings used "to establish" the building line were erected *after* the applicable ordinance became effective, the set-back sought to be established may be invalid as an unlawful delegation of powers to private individuals. See *Sierra Construction Co., Inc. v. Board of Appeals of Town of Greece,* 224 N. Y. S. 2d 787, 15 A. D. 2d 859 (1962) and cases cited, 224 N. Y. S. 2d at 788; aff'd 12 N. Y. 2d 79 (1962); *Boardman v. Davis,* 231 Iowa 1227, 3 N. W. 2d 608 (1942). This possible constitutional infirmity might well lead to construing the ordinance as referring only to buildings existing at the time of the effective date of the ordinance.

The same information may be relevant to the building on Lot 23-A and the buildings on Lots 1-A, 1-B and 1-E on Redwood Avenue, since, if a front building line has been established at all, the controlling line *might* be that established by the buildings on Redwood Avenue rather than those on Arrowood Road. Furthermore, even if different lines are validly established by the buildings on both Redwood Avenue and Arrowood Road, the Board should consider whether either building line could control Lot 23-B in that it equally "fronts" on *both* Arrowood Road and Redwood Avenue.

Thirdly, the provisions of the ordinance in regard to a set-back established by buildings may not apply to Lot 23-B as the lot may not be "between two intersecting streets" as the front of Lot 23-B is on two different streets—Arrowood Road and Redwood Avenue. The Board, itself, described Lot 23-B as situated *"at* the intersection of Arrowood Road and Redwood Avenue," (emphasis supplied) and the proof indicated this also.

Fourthly, the set-back provisions for a front line established by buildings may be incapable of enforcement (and possibly unconstitutional) because of vagueness in that the provisions give no method of computing what the previously established line is. See *O'Connell v. City of Brockton Board of Appeals*, 344 Mass. 208, 181 N. E. 2d 800 (1962) and the comprehensive Annotation, "Zoning-Front setback provisions", 93 A.L.R. 2d 1244, 1255 (§6).

We will accordingly remand the case, pursuant to Maryland Rule 871 a, without affirmance or reversal, for remand by the Circuit Court for Montgomery County to the Board for further consideration and determination, including the introduction of additional evidence if the Board deems this necessary.

We think it was unnecessary to print the memoranda submitted to the lower court in full and we determine that approximately 25% of the appendix to the appellant's brief consists of such unnecessary printing. We will, pursuant to Maryland Rule 882 c, divide the costs of printing this appendix so that the appellant will pay 25% of the cost of such printing and Montgomery County, one of the appellees, will pay the remaining 75% of this cost as well as all of the other costs in the case including that of the appellant's brief.

> *Case remanded, without affirmance or reversal, for remand by the Circuit Court for Montgomery County to the Montgomery County Board of Appeals for further consideration and determination in accordance with this opinion, including the introduction of evidence or otherwise; twenty-five per cent of the cost of printing the appendix to the appellant's brief to be paid by the appellant, the remaining seventy-five per cent thereof and all of the remaining costs, including the cost of printing the appellant's brief, itself, to be paid by Montgomery County.*