993 A.2d 1163

CHESAPEAKE BAY FOUNDATION, INC., et al.

v.

David CLICKNER, et ux.

No. 01525 Sept.Term, 2008.

Court of Special Appeals of Maryland.

April 30, 2010.

Jon A. Mueller, Annapolis, MD and Ann M. Fligsten, Arnold, MD (Amy E. McDonnell, Annapolis, MD, on the brief), for Appellants.

Harry C. Blumenthal and Eileen E. Powers (Blumenthal, Delavan & Williams, PA, on the brief), Annapolis, MD, for Appellees.

Panel: JAMES R. EYLER, ZARNOCH and KEHOE, JJ.

KEHOE, Judge.

The Chesapeake Bay Foundation, Inc. ("CBF") and the Magothy River Association, Inc. ("MRA"), appellants, opposed two zoning variance applications filed by David and Diana Clickner, appellees, for property located in Anne Arundel County (the "County"). The variance applications were initially considered by a County administrative hearing officer (the "AHO"), who granted them. Appellants appealed that decision to the Anne Arundel County Board of Appeals (the "Board"). The Board dismissed appellants' appeal on the

ground that appellants lacked standing to appeal. On July 14, 2008, the Circuit Court for Anne Arundel County affirmed the Board's decision. Appellants now appeal the judgment of the circuit court.

Appellants present the three issues, which we have reworded for purposes of this opinion:

1. Did the Board apply the wrong standard for administrative standing?

2. Was the Chesapeake Bay Foundation or the Magothy River Association aggrieved by the decision of the administrative hearing officer?

3. Did the Board of Appeals err in denying intervention to an MRA member who resided in close proximity to the subject property?

We will answer "yes" to the first question. In light of our disposition of that issue, it is necessary for us to remand this case to the Board so that it can address the second question. The third issue is not preserved for appellate review.

## Factual and Procedural Background

Appellees own Big Dobbins Island ("the Island"), which is located in the Magothy River in Anne Arundel County. The Island is located within the Chesapeake Bay Critical Area and is subject to those provisions of the Anne Arundel County Zoning Ordinance that restrict development activities in the Critical Area. Appellees applied for variances from provisions of the County's zoning regulations to permit them to construct a driveway, a storm water management structure, septic tanks and a well, all to be located within the Island's shoreline buffer area [1] and to build a pier on the Island even though there was no residence on the Island. Following a hearing before the

---

1. The "buffer" is a naturally vegetated strip of land running along a shoreline, generally at least 100 feet in width, to be "managed to protect aquatic, wetlands, shoreline, and terrestrial environments from man-made disturbances." MD.CODE ANN., NAT. RES. § 8-1802(a)(4) (2000, 2007 Repl.Vol., 2009 Supp.). Section § 17-8-301(b) of the County Code does not permit the construction of driveways, septic tanks, storm water management structures, or wells within the buffer.

Office of Administrative Hearings, the presiding AHO conditionally granted the variances on December 18, 2006. Appellants appealed that decision to the Board.

Prior to a hearing on the merits, appellees filed a motion to dismiss the appeal on the ground that appellants were not "aggrieved," as that term has been defined in Maryland cases, most prominently, *Bryniarski v. Montgomery Co.*, 247 Md. 137, 230 A.2d 289 (1967). Appellees contended that the Anne Arundel Code provided that only persons aggrieved by a decision of an administrative hearing officer had the right to appeal such a decision to the Board. Therefore, reasoned appellees, CBF and MRA lacked standing. The Board held an evidentiary hearing on the motion to dismiss that extended over two evenings. At the hearing, appellants advanced two arguments. First, they contended that the "aggrievement" standard did not apply to appeals to the Board. Second, they presented evidence and argument to demonstrate that they were, in fact, aggrieved. The following pertinent evidence was adduced at the hearing.

Appellees presented the testimony of Wayne A. Newton, a professional civil engineer, in support of their motion to dismiss. Newton identified twenty-two properties located within one-half mile of the Island, located those properties on an aerial photograph and prepared a list of those properties. He testified that neither CBF nor MRA owned property located within one-half mile of the Island. His testimony was unrefuted.

Appellants called Mark McInnes, a member of both CBF and MRA, who testified that he owned property located approximately 50 feet from the mainland portion of appellees' property. Mr. McInnes stated that the grant of the variances would aggrieve him because:

[He and his wife] bought this custom home and paid a lot of money for it because of its view, looking out on Dobbins Island.

[He] believe[s] that with [the] pier and [the] pontoon boat and all the other things that [appellees are] proposing doing there, [his] house could drop $200,000 in value.

[He and his kids] fish in the pond there where [appellees] want[ ] to put a pier. . . . [T]he wildlife is there that [he and his family] bought [their] house to enjoy. [They're] concerned about what [appellees are] going to do with the septic system.

The Board sustained appellees' objection to further testimony regarding how Mr. McInnes would be personally aggrieved since he was not a party to the AHO proceeding or the appeal to the Board.

MRA also presented the testimony of David Radford, another member of both MRA and CBF. Mr. Radford stated that he owned property located about 10 feet from the mainland portion of appellees' property, within sight of the Island. Although Mr. Radford was a party to the AHO proceeding, he was not allowed to testify as to his special harm because he did not appeal the AHO's decision, and was thus not a party to the proceeding in front of the Board.

The dive coordinator of MRA's diving team, Richard Carey, testified that, since 2000, MRA's diving teams have planted oysters purchased by the MRA on eight oyster reefs located in the Magothy River. Carey testified that, during the summer, MRA's divers are on the river "at least two to three times a week." An aerial photograph was introduced, identifying specific reefs and their locations. Carey testified that significant erosion and runoff into the river would damage the oysters on the reefs. He stated that MRA has a license from the State to sample the oyster reefs, which are otherwise closed to the harvest of oysters. On cross-examination, he admitted that MRA did not own the oyster reefs. In response to a question from a Board member, Carey stated that MRA's oyster projects, if conducted by a commercial enterprise, would cost over one million dollars.

Paul Spedero, the president of MRA, testified that MRA, working in conjunction with, among other organizations, Ma-

ryland Department of Natural Resources, is a party to a five-year plan to restore oysters in the Magothy River. As part of this effort, the MRA negotiated an agreement with watermen to close the Magothy River to oyster harvesting. He testified that the MRA provided technical and volunteer assistance to the DNR and County agencies in order to improve water quality in the Magothy River. He testified that MRA had spent $126,990 and expended 31,212 volunteer hours in improving water quality in the Magothy River between 1992 and the date of the hearing.

CBF presented testimony from three staff members and one volunteer to support its allegations of special damage to the corporation and as a representative of its members' interests. Amelia Koch, director of membership, testified that six CBF members live within one-half mile of the Island. The director of CBF's oyster restoration program, Stephanie Reynolds, testified that, while CBF does not own or lease any land from the State, it has worked on four reef sites in the River. The director of education operations, Matthew Mullen, testified that CBF takes students and teachers on field trips to the River. Volunteer Karl Treff testified that CBF planted submerged grasses at two sites located approximately three fourths of a mile from the Island.

At the beginning of the second day of the hearing, August 1, 2007, Mr. McInnes moved to intervene in the appeal. His counsel [2] argued:

> [H]e relied on the Magothy River Association to represent his interest in this appeal and he entered into an agreement for this with Magothy River in the spring. However, if the challenge to the standing of the Magothy River and Chesapeake Bay Foundation is successful, that will leave his interest in the matter unprotected. . . .

Appellees opposed the motion, arguing that it was premature because the Board had not yet determined whether MRA

---

2. Mr. McInnes was represented by the lawyer representing MRA.

or CBF had standing. The Board denied Mr. McInnes' motion to intervene without explanation.

At the close of the hearing and after discussion on the record, the Board voted four to three to dismiss the appeal for lack of standing. On November 29, 2007, the Board issued a written Memorandum Opinion setting forth its findings of fact and conclusions of law. The following findings and conclusions of the majority[3] of the Board are pertinent:

The Anne Arundel County Code (the "Code") provides that a "person aggrieved" by a decision of the Office of Planning and Zoning may appeal to this Board. *See,* Code, Section 3-1-14(c) and *see also* Section 18-16-402. The status of aggrievement has been the subject of numerous judicial rulings, which have sought to define the term. *See e.g., Bryniarski v. Montgomery Co.,* 247 Md. 137, 230 A.2d 289 (1967). For an appellant to be deemed "aggrieved", the appealed decision must affect the appellant in a personal and special way that is different from that suffered by the public generally. *DuBay v. Crane,* 240 Md. 180, 213 A.2d 487 (1965). However, an adjoining, confronting or nearby property owner is deemed, *prima facie,* to be specially damaged. *Bryniarski....*

\* \* \* \*

To challenge the fact of aggrievement of a nearby property owner, the party challenging such fact has the burden to show that the appellant is not specially aggrieved. *Id.* Here, the Petitioners have convinced us that the Protestants are not prima facie aggrieved or specially aggrieved. The

---

**3.** The opinion is somewhat unusual because only two members (Chairman McKnight and Member Rzepkowski) signed it. Two other members (McKechnie and Boring) filed separate concurring opinions. Both concurring members expressed the view that the aggrievement standard set out in *Bryniarski v. Montgomery Co.,* 247 Md. 137, 144–45, 230 A.2d 289 (1967), applied to the case and that neither the CBF nor the MRA was "aggrieved" under that standard. Both concurring opinions also made it clear that their authors believed that the provisions of the County Code mandated application of that test. Thus, for the purposes of resolving the issues in this appeal, the three opinions are conceptually identical.

Protestants presented witnesses and evidence to show that they are each specially aggrieved; but we are not persuaded.

\* \* \* \*

The subject property is an island.... We believe ... that owners of parcels within sight, sound or smell of this island would have sufficient standing to maintain an appeal....

\* \* \* \*

While acknowledging that they do not own or lease real property within sight or sound of the subject island, both the CBF and the MRA urged the Board to consider them specially aggrieved—different from the public at large. There is no question that both the CBF and the MRA have been and are engaged in oyster bed and [aquatic] grass planting activities on the Magothy.... We have assumed that the oyster and vegetation planting efforts ... occur within sight, sound[,] taste and smell of Dobbins Island. However, we do not believe that the conduct of these activities result in the Protestants['] being aggrieved, specially, from the public at large.

Any citizen can access the waters of the Magothy. The waters surrounding this island are State owned and regulated.... So long as an individual obeys all laws and regulations, any individual has as much right to be on the Magothy, and next to this island, as the CBF or the MRA.

The CBF and the MRA provide opportunities to raise and release oysters and grasses into the Magothy River. However, we fail to see how the release of items of personalty into the public waters results in the CBF and MRA being specially aggrieved by development activities on this island. Once a grass or oyster is released into the wild (or at least State owned waters), there cannot be a continuing property interest in it.

\* \* \* \*

The Protestants' argument that they have sufficient standing to maintain an appeal before this Board pursuant

to the principles of *Sugarloaf Citizens' Association v. Dept. of Environment,* 344 Md. 271, 686 A.2d 605 (1996) is off point. The *Sugarloaf* case provides that the requirements for administrative standing are relatively lenient and not very strict, but only in the absence of a statute or regulation specifying criteria for administrative standing. The Anne Arundel County Code has a clear statute that requires parties to an appeal to be aggrieved. *See,* Code, Section 3–1–104(c) and *see also* Section 18–16–402.

The Board then dismissed the appeal for lack of standing. Appellants filed a timely petition for judicial review in the Circuit Court for Anne Arundel County. At the conclusion of a hearing on July 14, 2008, the circuit court affirmed the Board's dismissal for lack of standing.

Appellants now appeal the decision of the circuit court affirming the Board's dismissal. We will discuss additional facts as necessary.

## Discussion

 When this Court reviews the decision of an administrative agency, such as the Board, we look through the circuit court's decision and evaluates the decision of the agency. *People's Counsel for Balt. County v. Surina,* 400 Md. 662, 681, 929 A.2d 899 (2007) (citing *Mastandrea v. North,* 361 Md. 107, 133, 760 A.2d 677 (2000)). In doing so, an appellate court "may not substitute its judgment for the administrative agency's in matters where purely discretionary decisions are involved, particularly when the matter in dispute involves areas within that agency's particular realm of expertise, so long as the agency's determination is based on 'substantial evidence.' " *Surina,* 400 Md. at 681, 929 A.2d 899 (citing, among other cases, *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376 (1999); and *Mayor of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 398, 396 A.2d 1080 (1979)).

 We will uphold the agency's findings of fact if they are "fairly debatable" upon the evidence before the agency.

*Surina,* 400 Md. at 682, 929 A.2d 899; *Bd. of County Comm'rs for Cecil County v. Holbrook,* 314 Md. 210, 216–17, 550 A.2d 664 (1988). However, " '[g]enerally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law.' " *People's Counsel for Balt. County v. Loyola College in Md.,* 406 Md. 54, 68, 956 A.2d 166 (2008) (quoting *Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 267–68, 734 A.2d 227 (1999)).

With these principles in mind, we turn to the specific contentions raised by the parties.

Before this Court, appellants argue that the Board of Appeals applied the incorrect standard for determining standing in an administrative proceeding. They contend that State law is clear that the requirements for standing for participation in administrative proceedings are relaxed and informal. They point to the Court of Appeals opinion in *Sugarloaf v. Dept. of Environment,* 344 Md. 271, 286–87, 686 A.2d 605 (1996), as authority for that proposition. They contend:

> To require a different standard will not only be contrary to law but also discourage citizen involvement in the administrative process. A citizen or organization needs to be able to adequately protect its personal and property rights or those of its members.
>
> \* \* \* \*
>
> Despite being advised by CBF and MRA of the ruling in *Sugarloaf* and the lessened standard of standing review in administrative proceedings, the Board ignored the ruling of the Court of Appeals and misapplied the law of standing. The Board held that because the Anne Arundel County Code has a statute that requires parties to an appeal to be aggrieved, *Sugarloaf* does not apply. The Board's decision is incorrect.

For their part, appellees do not quarrel with appellants' position that *Sugarloaf* accurately summarizes the current Maryland law on administrative standing. However, they correctly point out that the *Sugarloaf* opinion recognizes that

a specific statute or regulation may impose a more restrictive test. *See Sugarloaf*, 344 Md. at 286, 686 A.2d 605. Appellees contend that §§ 3–1–104(a) and 18–16–402 of the County Code provide that a would-be appellant must be both "aggrieved" by the AHO's decision as well as a party to the proceeding before the AHO. Appellees then analyze the evidence adduced at the Board hearing to support their contention that the Board's decision that CBF and MRA were not aggrieved by the AHO's decision to grant the variance was based on substantial evidence. Appellees state that the analysis employed by the Court of Appeals in *Bryniarski*, 247 Md. at 144–5, 230 A.2d 289, is controlling and that the Board correctly applied it to the facts of the instant case.

## I.

As the parties note in their briefs, Maryland land use cases draw a distinction between an "interested party" and an "aggrieved party" for purposes of standing in administrative proceedings. The Court of Appeals has explained:

The requirements for administrative standing under Maryland law are not very strict. Absent a statute or a reasonable regulation specifying criteria for administrative standing, one may become a party to an administrative proceeding rather easily. In holding that a particular individual was properly a party at an administrative hearing, Judge J. Dudley Digges for the Court in *Morris v. Howard Res. & Dev. Corp.*, 278 Md. 417, 423, 365 A.2d 34 (1976), explained as follows:

He was present at the hearing before the Board, testified as a witness and made statements or arguments as to why the amendments to the zoning regulations should not be approved. This is far greater participation than that previously determined sufficient to establish one as a party before an administrative agency. *See, e.g., Baxter v. Montgomery County*, 248 Md. 111, 113, 235 A.2d 536 (1967) (*per curiam*) (submitting name in writing as a protestant); *Bryniarski v. Montgomery Co.*, 247 Md. 137, 143, 230 A.2d 289, (1967) (testifying before agency); *Her-*

*telendy v. Montgomery Cty.*, 245 Md. 554, 567, 226 A.2d 672 (1967) (submitting into evidence letter of protest); *DuBay v. Crane*, 240 Md. 180, 184, 213 A.2d 487 (1965) (identifying self on agency record as a party to proceedings); *Brashears v. Lindenbaum*, 189 Md. 619, 628, 56 A.2d 844 (1948) (same). Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered by that agency, thereby becomes a party to the proceedings.

More recently, Judge McAuliffe for the Court in *Maryland–Nat'l v. Smith*, *supra*, 333 Md. at 10, 633 A.2d 855, summarized Maryland law relating to status as a party in administrative proceedings:

*Morris* and other cases of this Court indicate that the threshold for establishing oneself as a party before an administrative agency is indeed low. [W]e have said that one's presence at the hearing and testimony in favor of an asserted position is sufficient. . . .

*Sugarloaf,* 344 Md. at 286–87, 686 A.2d 605.

█ The concept of "aggrievement" is considerably less expansive. In order to be "aggrieved" by an administrative decision, a person must have

[a]n interest " 'such that he is personally and specifically affected in a way different from . . . the public generally.' " *Medical Waste v. Maryland Waste*, 327 Md. 596, 611 n. 9, 612 A.2d 241 (1992) (quoting *Bryniarski v. Montgomery Co.*, 247 Md. at 144, 230 A.2d 289). *See DuBay v. Crane*, 240 Md. 180, 185, 213 A.2d 487 (1965) ("the [administrative] decision must not only affect a matter in which the protestant has a specific interest or property right but his interest

therein must be such that he is personally and specially affected in a way different from ... the public generally").

*Sugarloaf,* 344 Md. at 288, 686 A.2d 605.

*Bryniarski* is the landmark case in Maryland on "aggrievement" as a requirement for standing in land use appeals. The *Bryniarski* Court explained:

> Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally.... The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review. Certain principles, however, have evolved. They are as follows:
>
> * * * *
>
> 2. In cases involving appeals under the provisions of a zoning ordinance:
>
> * * * *
>
> (b) An adjoining, confronting or nearby property owner is deemed, *prima facie,* to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved....
>
> (c) A person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved But he will be considered a person aggrieved if he meets the burden of alleging and proving by competent evidence—either before the board or in the court on appeal if his standing is challenged—the fact that his personal or

property rights are specially and adversely affected by the board's action.

* * * *

4. If any appellant is a person aggrieved, the court will entertain the appeal even if other appellants are not persons aggrieved.

247 Md. at 144–45, 230 A.2d 289 (citations omitted).

As we have indicated, a majority of the Board applied the "aggrievement" standard in deciding that neither CBF nor MRA had standing to appeal the AHO's decision. This portion of the Board majority's analysis was based upon two provisions of the Anne Arundel County Code. Section 18–16–402 provides:

A person aggrieved by a decision of the Administrative Hearing Officer who was a party to the proceedings may appeal to the Board of Appeals within 30 days after the date upon which the memorandum [of the AHO's decision] was filed. . . .

Similarly, County Code § 3–1–104(a) provides that a "person aggrieved by a decision of the [AHO] who was a party to the proceedings may appeal the decision to the Board." For the purpose of our analysis, we will assume, without deciding, that, in order to have standing to appeal the AHO's decision to the Board, either the MRA or the CBF must have been aggrieved by the AHO's decision.[4] Our review of the record

---

**4.** The assumption is at least questionable. Anne Arundel County is a charter county, exercising local government powers through the Express Powers Act, Article 25A of the Annotated Code. The Board was established, and functions under, the grant of authority to the County contained in Art. 25A § 5(U). *See Halle v. Crofton Civic Ass'n.*, 339 Md. 131, 140, 661 A.2d 682 (1995). Art. 25A § 5(U) authorizes the councils of charter counties to enact legislation establishing boards of appeal and authorizing those boards to decide appeals "on [the] petition of any *interested* person. . . ." (Emphasis added.)

With regard to charter counties, Article XI–A § 3 of the Maryland Constitution provides in pertinent part:

All such local laws enacted by the Mayor of Baltimore and City Council of the City of Baltimore or the Council of the Counties . . . shall be subject to the same rules of interpretation as those now

in this case leads us to the conclusion that the Board misinterpreted the "aggrievement" test. In its decision, the majority of the Board focused upon the fact that neither CBF nor MRA asserted a property interest in the vicinity of Big Dobbins Island. First, the Board majority correctly noted that, since neither appellant owned real property in close proximity to the Island, neither was *prima facie* aggrieved:

> [B]y MRA and CBF's own admission, they neither own nor lease any real property in or near the Magothy River. They do not own or lease any oyster beds or beds for

---

applicable to the Public Local Laws of this State, *except that in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control.*
(Emphasis added.)
Article XI–A § 3 makes it clear that, with regard to charter counties: The General Assembly maintains the right to trump local legislation. Local legislatures are limited, even when legislating a subject within their express powers, in that they may not pass laws that conflict with public general laws....
D. Friedman, THE MARYLAND STATE CONSTITUTION A REFERENCE GUIDE 222 (2006).
Thus, to the extent that the County Code conflicts with Art. 25A § 5(U), § 5(U) may control. *See Boulden v. Mayor & Comm'rs of Elkton,* 311 Md. 411, 415, 535 A.2d 477 (1988) ("[i]t is, of course, axiomatic that a municipality may be given power to legislate concurrently with the General Assembly. In cases of conflict, however, the public general law must prevail ...." (citations omitted)); and *Committee for Responsible Development on 25th Street v. Baltimore,* 137 Md.App. 60, 75, 767 A.2d 906 (2001) ("where there is a conflict between a Baltimore City ordinance and a public general law of the State, the public general law controls"). *See also Hope v. Baltimore County,* 288 Md. 656, 664, 421 A.2d 576 (1980) (A Baltimore County ordinance permitting direct appeals from the planning commission to the circuit court was inconsistent not only with the county charter but also with Art. 25A § 5(U) and was therefore invalid. "There would have been no need to insert in Constitution Art. XI–A, § 1 the provision that public local laws were to be thereby repealed unless it had been contemplated that the people of a county adopting a charter might thereby enact charter provisions inconsistent with prior acts of the General Assembly.")
We decline to decide this case on the basis of the issues adumbrated in this footnote. These matters were not briefed by the parties nor argued to us. In addition, we typically afford the affected local government an opportunity to address the issue before deciding a question of the validity of a local law. Anne Arundel County is not a party to this case.

aquatic grasses. The Protestants are not *prima facie* aggrieved.

The Board majority proceeded to evaluate the evidence to determine if the appellants were nonetheless aggrieved. The Board noted that:

There is no question that both the CBF and the MRA have been and are engaged in oyster bed and [aquatic] grass planting activities on the Magothy.... We have assumed that the oyster and vegetation planting efforts ... occur within sight, sound taste and smell of Dobbins Island. However, we do not believe that the conduct of these activities results in the Protestants being aggrieved, specially, from the public at large.

The Board concluded that the appellants were not aggrieved because

we fail to see how the release of items of personalty into the public waters results in the CBF and MRA being specially aggrieved by development activities on this island. Once a grass or oyster is released into the wild (or at least State owned waters), there cannot be a continuing property interest in it.... [T]hese animals are owned by the citizens of the State of Maryland, once released.

\* \* \* \*

The CBF and MRA are noble organizations whose goals include the best interest of the citizenry through their work on environmental health for the Magothy and the Chesapeake. However, any member of the public, with sufficient assets, could do the same. *These activities do not represent an ownership interest in property that render the Protestants more aggrieved than the public at large.*

(Emphasis added.)

In focusing exclusively upon property rights, the Board erred.

■ In *Bryniarski,* the Court of Appeals explained:

[A] person aggrieved by the decision of a board of zoning appeals is one whose *personal or property rights* are ad-

versely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a *specific interest or property right* but his interest therein must be such that he is *personally and specially affected* in a way different from that suffered by the public generally. *Bryniarski,* 247 Md. at 144, 230 A.2d 289 (citing *DuBay v. Crane,* 240 Md. 180, 185, 213 A.2d 487 (1965)) (emphasis added). Thus, contrary to the Board's analysis, property ownership is not a prerequisite to aggrievement.

*Jordan v. Hebbville,* 369 Md. 439, 442, 800 A.2d 768 (2002), is instructive in that it is an aggrievement case that did not involve an assertion of property ownership. In that case, the Court of Appeals considered whether a holder of a Baltimore County towing license had standing to appeal the issuance of a towing license to another entity. *Id.* The Court stated:

> At the administrative level appellees were "aggrieved" under the relevant Baltimore County Code section because their businesses are directly affected by the issuance of an additional towing license in the geographical area where they alone hold licenses. A party is aggrieved and there is standing if the party suffers some "special damage ... differing in character and kind from that suffered by the general public." In *Sugarloaf,* 344 Md. at 295, 686 A.2d 605, this Court discussed aggrievement and emphasized that standing does not depend on the type of issue raised or its likelihood of success and stated:
>
> > "Therefore, standing to challenge governmental action, and the merits of the challenge, are separate and distinct issues.... 'The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a ... court and not on the issues he wishes to have adjudicated'." [Citations omitted [[by *Jordan*]].]

369 Md. at 442–43, 800 A.2d 768. (Footnote and some citations omitted.)

■ Therefore, in order to demonstrate standing to the Board, appellants must demonstrate that they have "a specific interest ..." that will be affected "personally and specially

... in a way different from ... the public generally" by the proposed development. Because the Board majority focused exclusively on the question of property ownership, the Board, analyzing the facts of the case under an incorrect definition of aggrievement, did not make findings sufficient for us to determine whether or not appellants have a personal interest that will be affected personally and specially in a way distinct from the general public.

There is a great deal of evidence in the record that is not contested. Appellants presented evidence to the Board that they have invested substantial amounts of volunteer time, as well as money, on various submerged aquatic vegetation and oyster reef restoration projects in the Magothy River. The appellants also obtained permits from the State of Maryland in order to further their objectives. CBF has a scientific collection permit from the State of Maryland Department of Natural Resources ("DNR"). That permit allows CBF the right to go back, inspect and retrieve some oysters and reefs in the Magothy River. MRA has a scientific license from the State of Maryland, which permits MRA to take oyster samples, seed the reefs and dive off the reefs in the Magothy River as part of a monitoring program. The testimony from the appellants was that there are few, if any, other such licenses for the River. This evidence was unchallenged by appellees. On remand, the Board must determine whether these investments of time and money and the permits the appellants hold [5] are sufficient to satisfy the first prong of the test for aggrievement.

As to the second part of the test, i.e. whether appellants' interests would be affected in a way different than those of the general public, the Board majority concluded that, since the State owns the submerged aquatic vegetation and the oysters planted by appellants, appellants had no ownership interest in them and thus could not be aggrieved. The majority's logic is

---

5. MRA sought to introduce a copy of its license into the record; the Board refused to admit it. The specific terms of the licenses may be helpful in determining the nature of the appellants' interests.

faulty—ownership is not required to establish aggrievement. The proper question for the Board is whether the appellants would be affected differently than the general public by the grant of the variances. That the public generally has an interest in minimizing or avoiding sediment or other run-off in the State's waters is not, by itself, dispositive. *See Sugarloaf,* 344 Md. at 295, 686 A.2d 605 (The concept of standing " 'concerns ... the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ... in question.' ") (quoting *Assn. of Data Processing Service Org. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). We will, therefore, reverse the decision of the Board and remand the matter to it to determine whether either party [6] meets the correct definition of "aggrieved." [7] In addition, the parties may present argument and evidence regarding the matters discussed in footnote 4 of this opinion in order to establish an adequate record for an eventual judicial resolution of those issues.

## II.

 Whether the Board erred in refusing to permit Mr. McInnes to intervene in the proceedings before it is not before us as he did not appeal the Board's ruling. *See* Maryland Rule 8–131(a).

---

6. "It 'is a settled principle of Maryland law that, "where there exists a party having standing to bring an action ... we shall not ordinarily inquire as to whether another party on the same side also has standing." ' " *Garner v. Archers Glen,* 405 Md. 43, 54, 949 A.2d 639 (2008) (quoting *Sugarloaf,* 344 Md. at 297, 686 A.2d 605, quoting in turn *People's Counsel v. Crown Dev. Corp.,* 328 Md. 303, 317, 614 A.2d 553 (1992)).

7. We note that Chapters 650 and 651 of the Acts of 2009, effective January 1, 2010, directly address standing requirements for both administrative and judicial appeals of applications for variances to the application of local critical area land use ordinances. Section 3 of each act provides that it is not applicable "to any variance application filed with a local Critical Area program before January 1, 2010." Chapters 650 and 651 are inapplicable to the instant appeal.

THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS REVERSED AND THIS CASE IS REMANDED TO IT WITH INSTRUCTIONS TO REMAND THE SAME TO THE ANNE ARUNDEL COUNTY BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.